The Western Union Telegraph Company *v.* Harding.

Filed Nov. 6, 1885.

———————————————————

No. 12,140.

THE WESTERN UNION TELEGRAPH COMPANY *v.* HARDING.

103 505<br>159 168

TELEGRAPH COMPANY.—*Power to Regulate Office Hours.*—Under section 4176, R. S. 1881, a telegraph company may regulate, reasonably, its office hours according to the requirements of the business at the various points where it holds itself out for public service.

SAME.—*Failure to Transmit.—Statutory Penalty.*—The penalty for failing to seasonably transmit a message is not incurred unless there is a failure to receive and transmit during the usual office hours, both at the point where the message is received and that to which it is transmitted.

SAME.—*Information to Agents as to Office Hours at Different Points.*—To avoid the statutory penalty, it is not necessary that a telegraph company should keep its agents at all points informed concerning the office hours at all other points, so that the sender of a message may be voluntarily apprised of any probable delay in its transmission on that account. But it seems that a case might arise where the company would be bound to ascertain and disclose its inability to transmit the message speedily or be liable in damages.

HOWK, J., dissents.

From the Fountain Circuit Court.

*J. E. McDonald, J. M. Butler, A. L. Mason* and *H. L. Gordon,* for appellant.

*C. M. McCabe,* for appellee.

MITCHELL, C. J.—This suit was brought by Charles N. Harding against the Western Union Telegraph Company to recover the statutory penalty for negligently failing to transmit a message received by it from the plaintiff.

The complaint charges that the message was delivered to the defendant's agent, at its office in Crawfordsville, Indiana, on the 27th day of September, 1884, during usual office hours, to be transmitted to Covington, Indiana, and that payment for transmission had been made according to the regulations of the company. The message set out is of the tenor following:

"*To C. M. McCabe, Covington, Ind.*

"Can not come to-night. Write us to-morrow. Alls well.

"C. N. HARDING."

It is charged that the defendant's agent, at Covington, received the message in the evening of the day on which it was left for transmission, but that he neglected to deliver it until after noon of the day following.

With the general denial, the defendant filed a special answer. In this it is averred that the message was delivered to its agent at Crawfordsville at ten minutes after seven o'clock P. M., on September 27th, 1884, that being Saturday, and that it was promptly transmitted and received off the wire at Covington by the night operator of the Indiana, Bloomington and Western Railroad Company at twenty-five minutes past seven o'clock P. M. of the same day.

The answer alleges further that the defendant's office hours at Covington are from seven o'clock A. M. to seven o'clock P. M. That between those hours its office at that point is open to the public, and its agent and messenger are on duty to receive, deliver and transmit messages, and that it has no night operator or messenger in its employ at Covington to

The Western Union Telegraph Company *v.* Harding.

send or receive messages for the public after regular office hours; that its agent and messenger there go off duty at seven in the evening, and do not return again for duty until the regular office hour on the day following, and that it does not keep its Covington office open, or hold itself out to the public, to transact business there at any other time than between the hours mentioned; that all messages sent from, or received at, that office except during regular office hours, are sent and received by the night operator of the railroad company, or by some other person who is neither the agent, nor in the employ of the defendant. It is averred that the message sent to the plaintiff was received at Covington by the night operator of the railroad after the defendant's regular office hours, and that it was not so received by any person who was in its employ; that its office was not kept open on Sundays for the purpose of transacting business with the public, but, as was his custom, the defendant's messenger went to the office at nine o'clock on the Sunday morning after the message was so received, and, discovering it there, he went out to deliver it to the person to whom it was addressed, but failed to find him until about noon, when he delivered it. The paragraph closes with an averment that the message was transmitted with impartiality and good faith, and without delay, in the order of time in which it was received, without postponement, etc.

A demurrer was sustained to the second paragraph, and an exception taken. Afterwards the defendant withdrew the general denial, and, refusing to plead further, judgment was rendered for the statutory penalty.

Upon this appeal the question is presented, whether the facts pleaded in the answer constituted a sufficient excuse for the alleged default of the telegraph company?

The defence is predicated upon the fact that, although promptly sent, the message, in its usual course, was not received at Covington within the regular or usual office hours of the company at that point.

Section 4176, R. S. 1881, provides, in substance, that companies engaged in telegraphing for the public shall, "during the usual office hours, receive dispatches," and, on payment of the usual charge, "transmit the same with impartiality and good faith," in the order of time in which they are received, under penalty, etc.

The statute recognizes the common law right of the company to make reasonable regulations for the transaction of its business. It implies that to a reasonable extent it may prescribe the hours during which it will transact business for and with the public. Obviously, this must include the right to regulate its office hours according to the requirements of the service at the various points where it holds itself out for public service. It can not be implied that because the public service may require that its office hours should include a given time at one point, all other offices or places at which it serves the public must be open and fully equipped for such service an equal length of time. No reasonable requirement would demand this.

The question, then, comes to this, did the defendant incur the statutory penalty by receiving the message at Crawfordsville during its usual office hours there, and failing to transmit it to the person to whom it was addressed, at Covington, at any other than usual office hours at that point?

The reasonable construction of the statute is, that the penalty is incurred by a failure to receive and transmit messages impartially and in good faith during usual office hours. We know as a matter of common knowledge, that the transmission of a communication by telegraph involves necessarily two offices, one at the point at which it is delivered for transmission, and another at that to which it is transmitted. What, then, is meant by usual office hours, as used in the statute?

In construing a penal statute, it must be remembered that the law will intend nothing in favor of the imposition of a penalty until, upon a strict construction, it appears there has

been a clear violation of the statutory obligation for which the penalty is imposed.

In this view, it seems clear to us, contrary to our first impression, that the penalty is not incurred unless there is a failure to receive and transmit during the usual office hours, both at the point where the message is received and that to which it is to be transmitted. To hold otherwise would involve the telegraph company in the necessity of having its offices open for the reception and delivery of messages at all points an equal length of time.

If the requirements of its business at one point made it necessary to keep its office open twenty-four hours in the day, its usual office hours at such point would be continuous. It would, according to the construction contended for, be compelled to receive messages during usual office hours at that point. If it must transmit them, without delay, to every other point to which they may be directed, or incur the statutory penalty, irrespective of the requirements of its business at other points, then of necessity it must have no offices at all at points where it can not have them open continuously. We do not think this was the purpose of the statute.

The question arises whether the telegraph company should not keep its agents at all points informed concerning the office hours at all other points, so that when a message is presented for transmission, the sender may be apprised of any probable delay which may intervene at the other end. If the question should be as to the mere civil liability of the company for damages, there might a case arise in which such a requirement would be reasonable. Even in such a case we find eminent authority the other way.

In the case of *Given* v. *Western Union Tel. Co.*, which was an action brought in the circuit court of the United States for the Southern District of Iowa, to recover judgment for delay in the delivery of a message, this question arose. The message, for the non-delivery of which damages were claimed, was addressed to Marshalltown, Iowa, and was delivered to

defendant at its office in Des Moines, at 9 o'clock P. M.  It was not transmitted to Marshalltown until twenty minutes after 8 o'clock A. M. on the next day, for the reason that the office at Marshalltown closed at 9 o'clock P. M. for the night. It was urged by the plaintiff that having received the message at 9 o'clock at Des Moines, and having received full day rate charges for its transmission, the defendant was bound to transmit it to the person addressed at Marshalltown on that night.   The defendant responded that the office at Marshalltown closed at 9 o'clock P. M. for the night, and that the message could not be transmitted until the next day, which was done.   The question as to the duty of defendant to keep its employees at one office informed as to office hours at every other office very naturally arose upon the issue joined by defendant's answer, and the court was called upon to decide it.   In doing so, Mr. Justice MILLER said: "Nor do we see that it is the duty of the Western Union Telegraph Company to keep the employees of every one of its offices in the United States informed of the time when every other office closes for the night.   The immense number of these offices all over the United States, the frequent changes among them as to time of closing, and the prodigious volume of a written book on this subject, seem to make this onerous and inconvenient to a degree which forbids it to be treated as a duty to its customers, for neglect of which it must be held liable for damages.   There is no more obligation to do this in regard to offices in the same state than those four thousand miles away, for the communication is between them all, and of equal importance."   *Given* v. *Western Union Tel. Co.*, 24 Fed. Rep., p. 119.   So, in the case of *Stevenson* v. *Montreal Tel. Co.*, 16 U. C. Q. B. 530, BURNS, J., said: "Having selected that route, it may be asked, was there any obligation on the part of the defendants to inform him on the 23d of November that the line was then, at the receipt of the message, out of order.   I do not see that any such obligation existed.   The company were

bound only to transmit as soon as it could reasonably be done. * * * Therefore it appears to me it is not reasonable to expect that the company is bound, on every occasion when a person desires a communication to be forwarded, to inform him that possibly the message may not be forwarded for some minutes or some hours. It is more reasonable, I think, to cast the burthen or responsibility upon the person presenting messages to be forwarded, of inquiring whether they can be sent within any particular time, or of giving information of the particular importance it may be to the party that the message should be forwarded without delay."

It may be well to state that the members of this court are not all agreed as to the validity of the reasoning contained in the foregoing opinions, and are not, therefore, to be deemed as committing themselves to them as authority.

Whatever we might conclude, however, as to the doctrine of the cases cited when applied to actions for the recovery of civil damages, we are satisfied that where a penalty is sought to be enforced their principles should be applied.

It might well be that in a case where a message was delivered, which showed upon its face the importance of speedy transmission, and other means of making the communication were available to the sender, which might be resorted to if he was informed that the one chosen was ineffectual, or his conduct might otherwise be materially controlled thereby, the company would be bound at its peril to ascertain and disclose its inability to serve him, or render itself liable to respond in damages.

The rule which governs in the case of a passenger who purchases a ticket entitling him to passage on a railway train, has some analogy here. In such a case it is settled that it is the duty of the passenger to inquire before embarking upon the train whether it will carry him to the point of his destination. *Ohio, etc., R. W. Co.* v. *Applewhite,* 52 Ind. 540; *Pittsburgh, etc., R. W. Co.* v. *Nuzum,* 50 Ind. 141 (19 Am.

R. 703); *Beauchamp* v. *International, etc., R. R. Co.,* 9 Am. and Eng. R. R. Cas. 307, and note.

It is argued that the answer does not show but that the defendant's agent or messenger was present at the Covington office when the message was received, and it is said if they were, the company are liable for their failure to deliver the message even though it was after usual office hours. We do not think so. The statutory liability of the company is predicated upon the failure to receive and transmit during usual office hours, and we can not by construction enlarge its operation so as to make it include more than is expressed in its terms.

When it is admitted that the company has the right to prescribe office hours for a given place, and that the message was transmitted promptly according to the usual office hours as prescribed, then, unless it is made to appear that under the circumstances involved, the hours prescribed are unreasonable, penal liability does not attach.

The complaint having averred that the message was delivered at Crawfordsville during usual office hours, and that the agent at Covington failed and neglected to deliver it seasonably, was presumptively sufficient to cast the burden upon the defendant of excusing its apparent default. The assignment that the complaint was not sufficient is, therefore, not well taken.

For the error in sustaining the demurrer to the second answer the judgment is reversed, with costs.

HOWK, J., does not concur in this opinion.

Filed Nov. 6, 1885.