# JANUARY TERM, 1900.

CASE 71—ACTION FOR DAMAGES FOR DELAY IN DELIVERING TELEGRAM—JAN. 3, 1900.

## Western Union Telegraph Company v. Van Cleave.

APPEAL FROM MARION CIRCUIT COURT.

1. DAMAGES—MENTAL ANGUISH.—Mental anguish resulting from failure of plaintiff to be present at his brother's funeral, asserted to have been caused by delay in the delivery of a telegram, is an element of damage in an action against a telegraph company for the delay.

2. TELEGRAPH COMPANIES—NIGHT MESSAGES.—Telegraph companies have a right to prescribe a regulation that night messages are not to be delivered until the following morning, and they are not liable for damages in tort to the receiver of such a message where it was delivered within a reasonable time after the beginning of office hours on the morning following the receipt of the telegram.

3. SAME.—It is competent for a telegraph company to establish reasonable hours within which their business may be transacted and they may fix those hours with reference to the quantity of business done. They may not be required to employ both

a day and a night messenger if it be apparent that the busi-
ness of its line will not justify such employment.

WILLIAM LINDSAY FOR APPELLANT, ARGUED ORALLY.
    (No brief in the record.)

A. E. RICHARDS FOR THE APPELLANT, ARGUED ORALLY.

RICHARDS, WEISSINGER & BASKIN FOR APPELLANT.

1. The motion for a peremptory instruction should have been sus-
    tained.  The message was a night message, sent as such because
    it was cheaper and the message was delivered strictly in ac-
    cordance with the terms and conditions assented to by the
    sender.
2. Any instruction authorizing vindictive damages was improper.
3. The court erred in refusing instruction number one, offered by
    the defendant, which was in effect a peremptory instruction to
    find for the defendant because it was not shown that it had
    violated the contract it had made.

W. J. LISLE ALSO FOR APPELLANT.   (RICHARDS, WEISSINGER &
BASKIN OF COUNSEL).

    Upon the same points counsel cited:   Chapman v. W. U. T.
Co., 90 Ky., 266; Primrose v. W. U. T. Co., 154 U. S., 23; W.
U. T. Co. v. Harding, 103 Ind., 505; Given v. W U. T. Co., 24
Fed. Rep., 119; 2 Shear. & Red. on Neg., sec. 540; Wolf v. W.
U. T. Co., 62 Pa. St., 83; s. c. 1 Am. Dec., 387.

RUSSELL & SONS AND FINLEY SHUCK FOR APPELLEE.

    Upon the points of law relied on by appellant, counsel cited
Leake on Contracts, 443; Ky. Con., 196.

CHIEF JUSTICE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

    The appellee recovered judgment of appellant for the
sum of $1,000 for mental anguish caused by his inability
to attend his brother's funeral, and which non-attendance
he avers, was owing to the negligent failure of the appel-
lant to deliver to him in a reasonable time a telegram
announcing the death of that relative.   The message
was sent from the appellant's office at Lake City, Mis-
souri, at about nine o'clock on the evening of January 1,
1894, and reached Lebanon, Kentucky, the place of its
destination, at eleven-forty-four o'clock on the same even-

[ 30 ]

ing. It was not delivered to the appellee until next morn.
ing at about eight o'clock, and too late for the first train
out that morning. It may be assumed, for the purposes
of the case, that the failure of appellee to get the train
was the sole cause of his not attending the funeral. The
appellant resists recovery on the grounds:

First, that mental anguish, accompanied by no physical
injury, gives no cause of action; second, that the message
was a "night" message, and, according to the terms in-
dorsed on the blank on which it was written, was to be
delivered "not earlier than the morning of the next ensu-
ing business day;" and, third, that its office at Lebanon
during the night was in charge of an operator, who was
also the agent and night operator for the railroad com-
pany, and the rules of his employment forbid his leaving
the office at night for any purpose; that a delivery boy
was kept only from six o'clock a. m. until six o'clock p. m.,
because the business did not justify night delivery.

Other minor defenses were presented, but, as we shall
see, they need not be considered.

The ground first suggested has furnished the occasion
for much controversy, and much conflict of authority. It
is probably in accordance with the views of a majority of
the State courts that mental anguish and injured feelings
alone, and unaccompanied with physical injury, do not
furnish ground for recovery. But in this State the rule
has been announced otherwise. Chapman v. Western
Union Telegraph Co. (1890), 90 Ky., 265, [13 S. W., 880].

And so likewise a recovery in this class of cases can
be had under the decisions of the States of Texas, Ala-
bama, Indiana, Iowa, North Carolina, and Tennessee. It
may be admitted that there are difficulties in the way of
an exact measurement of such damages, but it does not

seem to us that this is a sufficient reason why a negligent public carrier should escape with merely nominal damages. The same difficulty of accurately measuring such damages arises in cases of slander, breach of marriage contract, and in cases where mental suffering is accompanied with physical pain.

If, as argued, the law does not deal generally with the feelings and emotions, it may be answered that here the parties themselves have contracted with respect to those very things, or, at least, have contracted with respect to those things which naturally affect the feelings and emotions.

For the purpose of having him attend, a message is sent to a son, informing him of his mother's death, and the date of her funeral and burial. It must be supposed that a failure to deliver such a message will cause mental suffering; and this suffering is, therefore, a consequence or result within the contemplation of the parties. This is true whether the carrier is sued on its contract or because of its failure to perform a public duty as a common carrier of intelligence.

It is an old doctrine that, "when the parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fully and reasonably be considered either as arising naturally—i. e. according to the usual course of things—from such breach of contract itself, or such as may be reasonably supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it." Hadley v. Braxendale, 9 Exch., 341.

The rule is certainly not less comprehensive if applied as a test for the ascertainment of the liability of a com-

mon carrier who may violate its public duty. The sub-
ject-matter of the undertaking by the carrier is not of a
pecuniary nature, and the breach of the undertaking can
not be measured by an attempted ascertainment of what
money is lost by reason of the breach. As the question,
however, must be regarded as a settled one in this State,
we need not elaborate this branch of the case further.
The doctrine is fully supported in the recent well-consid-
ered cases of Mentzer v. Western Union Telegraph Co.
(1895), 93 Iowa, 752, [57 Am. St. R., 294; 62 N. W., 1; 28
L. R. A., 72]; and Cashion v. Telegraph Co. (1898), 123 N.
C., 270, [68 Am. St. R., 822; 31 S. E., 493], where all the
cases are collated.

We are of the opinion, however, that the second and
third points suggested are conclusive against appellee's
right of recovery. While the nature of his action is in
tort, and not on a contract,—as he had none with
the company,—he can not recover if the company
has complied with the terms of its contract and
undertaking with the sender of the message, provided, in-
deed, those terms are such as may reasonably be impos-
ed and agreed upon. That night messages are a business
necessity, and contracts of the kind made here
for delivery of such messages on the next morning
after sending them may be made, can not be doubted in
the face of the authorities and on principle. Hibbard v.
Telegraph Co., 33 Wis., 558, [14 Am. St. R., 775]; Fowler
v. Tel. Co. (Me.), [15 Atl., 29], and cases cited.

The contract enables the sender to get cheaper rates,
and yet have his message delivered in time to be acted
upon the next morning; and it enables the company to
send the message during the odd hours of the night, when
business is not pressing, and when it may furnish the

service at a cheaper rate. The court below therefore erred in striking this plea from the company's answer.

We think it likewise competent for such companies to establish reasonable hours within which their business may be transacted, and they may fix those hours with reference to the quantity of business done. They may not be required to employ both a day and a night messenger, if it be apparent that the business of the office will not justify such employment. This we understand to be the rule everywhere. Telegraph Co. v. Harding, 103 Ind., 505, [3 N. E., 172]; W. U. Co. v. Wingate, 6 Tex. Civ. App., 394, [25 S. W., 439]; W. U. Co. v. McCoy (Tex. Civ. App.), [31 S. W., 210]. Under the proof on the points last named, the law is for the defendant, and a peremptory instruction should have been given.

Wherefore the judgment is reversed for proceedings not inconsistent with this opinion.

JUDGE DuRELLE DISSENTS FROM SO MUCH OF THE OPINION AS HOLDS THAT MENTAL ANGUISH MAY BE MADE AN INDEPENDENT ELEMENT OF DAMAGES, AND RECOVERY HAD THEREFOR.