CASE 97—ACTION FOR DAMAGES FOR DELAY IN DELIVERING TELEGRAM—JAN. 26.

## Western Union Telegraph Co. v. Crider.

APPEAL FROM HARDIN CIRCUIT COURT.

1. TELEGRAPH COMPANIES—REASONABLE REGULATIONS—NIGHT OFFICES. Telegraph companies may make reasonable rules for the conduct of their business and may, where the volume of business does not require them to keep their offices open, close their offices against night delivery.

2. SAME—REASONABLE REGULATIONS—QUESTION OF LAW AND FACT. The reasonableness of a regulation is a question of law; its existence is a question of fact, and the habitual conduct of the company's agents is competent evidence as bearing on the question of fact.

W. H. MARRIOTT FOR APPELLANT.

1. The verdict is not sustained by the evidence.
2. The verdict of the jury is excessive.
3. The jury disregarded the second instruction in which they were told that the defendant had a rule not to deliver messages from its office at Elizabethtown between 7 p. m and 7 a. m., and that it had the right to make such rule if reasonable.

Western Union Telegraph Co. v. Crider.

4. The court erred in leaving to the jury the question whether the rule was reasonable.

Citations: Gray on Communication by Telegraph, sec. 13; W. U. Tel. Co., v. Harding, 103 Ind., 505; Given v. W. U. Tel. Co., 24 Fed. Rep., 119; Thompson on Electricity, sec. 300; Express Co v. Caldwell, 21 Wallace, 269; Camp v. W. U. Tel. Co., 1 Met., 168; L. & N. R. R. Co. v. Brownlee, 14 Bush, 600; Wicks v. L. & N. R. R. Co., 15 Ky. Law Rep., 605; Wilsey v. L. & N. R. R. Co., 7 Ky. Law Rep., 500; Bodfish v. Fox, 39 Am. Dec., 611; W. U. Tel. Co. v. Carew, 7 Am. L. Reg., 24; W. U. Tel. Co. v. McCoy, 31 S. W. R., 210; 19 Am. & Eng. Ency. of Law, 645; Ill. Cent. R. R. Co. v. Whittemore, 92 Am. Dec., 141; South Florida Ry. Co. v. Rhoades, 37 Am. & Eng. Ry. Cas., 100; L. & N. R. R. Co. v. Fleming, 18 Am. & Eng. Ry. Cas., 356.

A. E. RICHARDS AND WM. LINDSAY ALSO FOR APPELLANT, ARGUED ORALLY.

R. L. STITH AND J. D. IRWIN FOR APPELLEE.

Upon the questions of law relied upon by appellant, counsel made the following citations: Bliss v. Baltimore Tel. Co., 30 Mo., 140; Julius v. W. U. Tel. Co., 98 Ind., 327; W. U. Tel. Co. v. Gongas, 84 Ind., 176; W. U. Tel. Co. v. Bruner, 19 S. W. R., 149; Gray on Teleg., sec. 13; Heinman v. W. U. Tel. Co., 57 W., 562; W. U. Tel. Co. v. Harding, 103 Ind., 505; W. U. Tel. Co. v. Broesche, 72 Tex., 654; W. U. Tel. Co. v. Smith, 15 Ky. Law Rep., 334; W. U. Tel. Co. v. Daniels, 15 Ky. Law Rep., 813; W. U. Tel. Co. v. Cleaver, 13 Ky. Law Rep., 301.

CHIEF JUSTICE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The appellee was an invalid, living at Elizabethtown, to whom her physician, living at Vine Grove, had sent by mail, on March 16, 1895, a prescription of quinine and morphine, to be taken in capsules every two hours on the following morning. At 11:25 o'clock on the night of the same day the physician sent to her the following telegram: "Rec'd 11:25 p. m., March 16, 1895. Dated March 16, 1895. Via Louisville, Ky. Mrs. Carrie Crider, care McCan's House, Elizabethtown, Ky.: Do not take capsules in morning. [Signed] S. N. Willis."

The message reached the terminal office at Elizabethtown

in a few minutes after it was sent from Vine Grove, but was not delivered to Mrs. Crider until 6:40 o'clock on the next morning. In the meantime the patient had taken two of the capsules, beginning at 2 o'clock that morning. On receipt of the message, she was naturally alarmed. She became quite sick, although assured by a physician, for whom she had sent immediately, that there was nothing dangerous in the medicine. She was quite sick during the day, and claims that she then suffered greatly, and for days afterwards, from the effects of the medicine.

While the medicine is shown by all the physicians who testify to have been the proper medicine for her, and ought to have been beneficial, rather than hurtful, to her, it did make her sick, and apparently cause her considerable suffering. She brings this action because of this suffering, which, she claims, she would not have undergone had the message been delivered promptly.

The chief contention relied on by the company to defeat recovery is that, under its rules and regulations, which were reasonable, there was no night delivery at the Elizabethtown office. The proof on this behalf was introduced wholly by the company, and shows that the company only had a day operator, who sent and received messages from eight in the morning until seven in the evening; that the night operator worked exclusively for the railway company, but was to receive and send messages at night, turning over the collections therefor to the day operator in the morning, who was then to deliver them; that this night operator was not permitted to leave the office at night, and there was no one kept there to deliver messages, because the business was not sufficient to justify this expenditure.

The night operator explained the delivery of the mes-

sage in question at 6:40 by saying that he obtained per-
mission of the train dispatcher to take it to Mrs. Crider,
because he noticed its contents, and supposed, if delivered
at the early hour of 6:40, it would be early enough; that
there was no one about the depot that night after he re-
ceived the message by whom he could send it, and his
presence that night was required at the office, taking or-
ders for trains and giving signals thereto.

We think, under the proof, the court should have in-
structed peremptorily for the company. It seems to be
well settled that telegraph companies may make reason-
able rules and regulations for the conduct of their busi-
ness, and may, where the volume of the business does not
require it or justify the expense, close their office for night
delivery.

Ordinarily, whether such a rule or regulation
is a reasonable one is a question for the court, and not
one for the jury. And certainly such is the law when, as
in this case, there is no contrariety of the testimony on the
subject.

In Gray's Communication by Telegraph (section 13) it
is said: "Apart from its right to make by-laws for its
internal management, a telegraph company is entitled, un-
doubtedly, to make reasonable regulations, subject to
which only the duty to serve arises. The reasonableness
of the regulations is a question for the court to determine,
and regulations which contravene the Constitution, laws
or public policy of the place where they are set up are
unreasonable."

(See, also, W. U. Tel. Co. v. Harding, 103 Ind., 505, [3 N.
E., 172]; 19 Am. & Eng. Enc. Law, p. 645.)

In holding that it was a reasonable regulation for a
railway company to require passengers to surrender their

tickets, the court, in Ill. Cent. Railroad Co. v. Whitte-
more, 92 Am. Dec., 141, said:

"The circuit court left it to the jury to say whether the
rule was reasonable. This was error. It was proper to
admit testimony, as was done, but, either with or without
this testimony, it was for the court to say whether the
regulation was reasonable, and therefore obligatory upon
the passengers. The necessity of holding this to be a ques-
tion of law, and therefore within the province of the court
to settle, is apparent from the consideration that it is
only by so holding that fixed and permanent regulations
can be established. If this question is to be left to juries,
one rule would be applied by them to-day and another to-
morrow. In one trial, a railway would be held liable, and
in another, presenting the same question not liable.
Neither the company nor passengers would know their
rights or obligations," etc. (See, also, South. Fla. Rail-
road Co. v. Rhoads, 37 Am. & Eng. R. R. Cases, 100, [5
South., 633], and the numerous cases there cited.)

Of course, whether such a rule as is in question here has
been in any given case in fact established by a company
is a question of fact for the jury, if its existence is called
in question; and proof that the company's *agents* con-
stantly and habitually observed no such rule, but did de-
liver messages at night, would be competent as conducing
to show that no such rule existed.

But in the case at hand, the few instances where ap-
pellee proves such delivery at night are shown to be en-
tirely consistent with the rule not to deliver.

For the reasons given, the law of the case, arising on
the facts stated, required a peremptory instruction for
the defendant.

The judgment is therefore reversed for proceedings con-
sistent herewith.