CASE 100.—ACTION BY L. BIBB AGAINST THE WESTERN
UNION TELEGRAPH COMPANY.—February 23, 1910.

# Western Union Tel'g Co. v. Bibb

Appeal from Daviess Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Re-
versed.

1.  Telegraphs and Telephones—Delivery of Message.—Where
    an addressee's name was not in the city directory and he
    was not a householder, there was no lack of ordinary care
    on the telegraph company's part in failing to learn his where-
    abouts in the eighteen minutes intervening between the re-
    ceipt of the telegram and the closing of the telegraph of-
    fice.
2   Telegraphs and Telephones—Delivery of Messages—Regula-
    tions—Office Hours—Validity.—Where the volume of business
    done by a telegraph company in a town on Sunday did not
    amount to over $1.50 a day, a regulation of the company
    closing its office except between the hours of 8 and 10 in
    the morning and 4 and 6 in the afternoon was reasonable
    and valid.

RICHARD & RONALD and GEORGE H. FEARENS for appel-
lant.

BEN D. RINGO and LaVEGA CLEMENTS for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Re-
versing.

Leslie Bibb lived in Owensboro. In September,
1905, his wife, with their two little children, went to
visit her mother at Valley Park, Mo., about eighteen

miles from St. Louis. On Sunday, October 15th, at
4:42 p. m., the following message was delivered to
the Western Union Telegraph Company at Valley
Park to be sent to him: ''Doctor says Beulah has
diphtheria. May die before midnight.'' The mes-
sage reached Owensboro at 5:42 p. m. The manager
looked in the city directory, but Bibb's name was not
in it. It was a custom of the office when they could
not find a man's name in the directory to inquire at
the postoffice; but the postoffice was closed at 5:40
on Sunday, and so the manager delivered the mes-
sage to a delivery boy. By a regulation of the com-
pany the office at Owensboro was only kept open on
Sunday from 8 to 10 in the morning and from 4 to
6 in the afternoon. The messenger, being unable to
find Bibb, returned the message undelivered. The
next morning he took the message to the postoffice,
and, learning Bibb's address, delivered the message
to him about 8 o'clock. The child died at 1 o'clock
that night. If the message had been delivered to
him when received, he could have taken a train which
left Owensboro at midnight, and thus reached Valley
Park about 8 o'clock the next morning. When he re-
ceived the message at 8 o'clock the next morning, the
first train he could take was one leaving Owensboro
at noon on that day, and this took him to Valley Park
about 10 o'clock that night. He reached Valley Park
in time to attend the funeral of his child, and he could
not have reached it in any event before the child died.
He brought this suit against the telegraph company
to recover damages for the delay in the delivery of
the telegram, and in the circuit court recovered a
judgment for $300. The telegraph company appeals.

The only question we deem it necessary to consid-
er is whether the regulation of the telegraph company

as to the hours of closing its office on Sunday was reasonable and protected it, although the sender of the message was not notified of the regulation, if it used ordinary care under the circumstances.

Bibb's name was not only not in the directory, but he was not a housekeeper. His place of residence was at Seventh and Sycamore streets, some distance from the telegraph office. His place of business was near the telegraph office, but the telegraph manager did not know this, and nobody was there on Sunday. The message could not have been delivered there, and no information could have been gotten there as to where he was. Only eighteen minutes elapsed after the receipt of the message before the closing hour of the office, and it cannot be said that there was a lack of ordinary care in failing to learn where Bibb was in eighteen minutes under the circumstances. So that, if the regulation of the company is valid and protects it, the jury should have been instructed peremptorily to find for the defendant. The circuit court submitted to the jury the reasonableness of the regulation, and also in effect told them that it did not protect the telegraph company, unless the sender of the message had notice of it. The regulation had been in effect in Owensboro for a great many years. There is no controversy in the record as to the facts. The volume of business done there is small on Sunday, amounting in all not over $1.50 a day. The statute of the state requires that no work shall be done on Sunday except in matters of necessity and mercy. A telegraph company, like other persons, cannot be required to do business all day Sunday.

While a railway company may run trains on Sunday, it is not required to run trains on Sunday as on

other days. The regulation of the telegraph company closing the office on Sunday except during the hours named was a reasonable and proper one. In Western Union Telegraph Company v. Van Cleave, 107 Ky. 469, 54 S. W. 828, 22 Ky. Law Rep. 55, 92 Am. St. Rep. 366, we said:

"We think it likewise competent for such companies to establish reasonable hours within which their business may be transacted, and they may fix those hours with reference to the quantity of business done. They may not be required to employ both a day and night messenger, if it be apparent that the business of the office will not justify such employment. This we understand to be the rule everywhere. Telegraph Co. v. Harding, 103 Ind. 505, 3 N. E. 172; W. U. Co. v. Wingate, 6 Tex. Civ. App. 394, 25 S. W. 439; W. U. Co. v. McCoy, Tex. Civ. App., 31 S. W. 210. Under the proof on the points last named, the law is for the defendant and a peremptory instruction should have been given."

In Western Union Telegraph Company v. Steenbergen, 107 Ky. 472, 54 S. W. 829, 21 Ky. Law Rep. 1290, we also said:

"Again, the office hours of the company where the message was to be delivered to the sendee were from 7 o'clock a. m. to the same hour in the evening, and the message in question, having been received during the night of the 19th, need not have been delivered until within a reasonable time after 7 o'clock on the morning of the 20th."

In Western Union Telegraph Co. v. Crider, 107 Ky. 600, 54 S. W. 963, 21 Ky. Law Rep. 1336, we again said: "We think, under the proof, the court should have instructed peremptorily for the company. It seems to be well settled that telegraph companies

may make reasonable rules and regulations for the conduct of their business, and may, where the volume of the business does not require it or justify the expense, close their office for night delivery. Ordinarily whether such a rule or regulation is a reasonable one is a question for the court, and not one for the jury. And certainly such is the law when, as in this case, there is no contrariety of testimony on the subject." See also Davis v. Western Union Telegraph Co., 66 S. W. 17, 23 Ky. Law Rep. 1758; Western Union Telegraph Co. v. Scott, 87 S. W. 289, 27 Ky. Law Rep. 975.

In none of these cases did it appear that the sender of the message had notice of the regulation, and, while there is some conflict of authority on the question, the great weight of authority sustains the rule we have heretofore laid down. In Sweet v. Postal Telegraph Co., 22 R. I. 344, 47 Atl. 881, 53 L. R. A. 732, the Supreme Court of Rhode Island adopting the same view said: "The controlling question is whether the receipt of the message for transmission after the terminal office had closed was an act of negligence. This depends upon whether the receiving agent was bound to know the time of closing in the terminal office. The decisions on this point are practically unanimous that a receiving agent is not so bound, for the reason that in view of the great number of telegraph offices all over the country, and their varied conditions, some large and requiring constant service, others small and with infrequent calls, a requirement that every agent should know the hours of every office would be unreasonable, if not impossible. To hold the company to such a duty would either require a uniform time of closing in all offices which are not constantly open, or a directory

of all such offices with their various hours at different seasons of the year. The former alternative would compel a service at small stations far beyond their needs, and the latter, as Mr. Justice Miller said in Given v. Western Union Telegraph Co. (C. C.) 24 Fed. 119, would be 'onerous and inconvenient to a degree which forbids it to be treated as a duty to its customers for neglect of which it must be held liable for damages.' '' In a note to that case, on page 733 of 53 L. R. A. the learned editor thus states the rule:

"The general rule is that, in the absence of a special contract to transmit a telegram immediately, or an express request for information as to its delivery, it is not obligatory upon a telegraph company to acquaint the customer with the office hours of the company at the point to which a message delivered by him for transmission is directed."

The rule is also thus stated in 27 Am. & Eng. Ency. of Law, 1038, 1039; "Similarly, where a message is transmitted to the receiving office after its regular hours, the company is not guilty of negligence, in the absence of a special undertaking, in deferring delivery until the next morning. The rule upheld by the weight of authority is that the sender of the message is bound by a reasonable rule fixing office hours without regard to his knowledge of it; but the contrary has been held."

We therefore conclude that, under the evidence, the court should have instructed the jury peremptorily to find for the defendant. This conclusion makes it unnecessary for us to consider the other questions urged by counsel.

Judgment reversed, and cause remanded for further proceedings consistent herewith.