### Adams Express Company v. Hibbard.

(Decided December 15, 1911.)

## Appeal from Laurel Circuit Court.

1. Carrier—Express Company.—A regulation of an express company, by which it distinguished its principal or larger offices from those kept in smaller towns, by keeping a night agent in the larger offices, and closing the smaller offices after business hours, and in delivering freight after office hours consigned to an office which is not a night office, carried the freight to the nearest night office, where it was held until the next day, and then carried to its destination, is a reasonable regulation, and will be upheld.

2. Instruction.—It is error to give an instruction based upon facts which, although probably true, have not been supported by testimony tending to establish those facts.

LAWRENCE MAXWELL, W. L. BROWN and JOSEPH L. GRAYDON for appellant.

SAM C. HARDIN for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

At an early hour on July 30, 1909, Sophia Hibbard, the wife of appellee, died at the Eastern Kentucky Luna-

tic Asylum, in Lexington, Ky. Appellee resided in Clay County, at a point about 20 miles from London, Ky., the nearest railroad station. The body of Mrs. Hibbard was delivered to the appellant in Lexington on the evening of July 30th for shipment and delivery to the appellee at London. Appellee having received a telephone message from the asylum officials that the body would reach London at about 2 o'clock that night, proceeded with a wagon, accompanied by several of his friends, to London, for the purpose of receiving the body upon its arrival, and carrying it from London to his home in Clay County for burial. They met the train, and went to the express car for the purpose of receiving the body; but, as London was not a night station, and there was no express agent on duty at that time, the route agent of appellant declined to deliver the body to the appellee; and, acting under its rule in such cases, it carried the body a few miles farther down the road to Corbin, which was a night station, and held it there until the next morning, when it was returned to London on the northbound train, which reached there at 11:55, mid-day. Appellee and his friends received the body, and immediately started to his home in Clay County, arriving there between 8 and 9 o'clock at night. The body was carried in an ordinary road wagon, over a rough road. When they reached appellee's home, the body was so far decomposed that appellee could not dress it for burial, or remove it from the wooden shipping box which contained it, but was compelled to bury it as it was received, after a brief funeral service. Appellee sued the appellant for damages, alleging that its agent wilfully and wrongfully refused to deliver the body to the appellee when it first arrived at London; and, further, that it had placed the body on the railroad trucks at Corbin, and had wilfully and wrongfully permitted and allowed it to remain on the railroad platform, in the sun, until about 11 o'clock, of July 31st, before it re-shipped it back to London, thereby causing the decomposition of the body, the consequent delay, and distress of mind attending the final burial of his wife. He obtained a verdict for $500, and from a judgment based upon that finding, the company prosecutes this appeal.

The evidence shows that if the body had been held at Lexington for shipment on the morning train of July 31st, it would not have reached London sooner than 1:30

o'clock, p. m., of that day, which would have been an hour and a half later than the actual delivery of the body at noon of that day.

Appellant distinguishes its principal or larger offices from those kept in smaller towns, by keeping a night agent in the larger offices, and closing the smaller offices after business hours; and, in delivering freight, after office hours, consigned to an office which is not a night office, it carries the freight to the nearest night office where it is held until the next day when it is carried to its destination. London was not a night office. The company received no freight for delivery at London by its night train, except when there was a request by the shipper, and a prepayment of the charges; and, in such cases, special arrangements could be made for a night delivery. It will also sometimes receive freight to be delivered and put off at the owner's risk. No request was made of appellant for a night delivery in this case, and no notice was given to the appellant in advance, either at Lexington, or at London, that the appellee would be at London to claim the body of his wife when the train should reach there at 2 o'clock in the morning. The train made a stop of only one minute at London, and that was one of the reasons why appellant did not have a night office there.

The question for decision, therefore, is this: Is the rule of the appellant, by which it declined to deliver the body at the night train, but carried it through London to Corbin, the nearest night station, and held it there for the return train next morning, a reasonable rule, considering the nature of the shipment, and the exigencies of the case?

While the precise question has not been decided by this court, we have approved a similar regulation made by a telegraph company, which is, in no substantial respect, different in principle from the regulation in the case at bar. In Western Union Telegraph Co. v. Bibb., 136 Ky., 817, the telegraph company received a telegram at Owensboro at 5:42, p. m., on a Sunday. By a regulation of the company, the office at Owensboro was kept open on Sundays only from 8 to 10 o'clock in the morning, and from 4 to 6 o'clock in the afternoon. It was conceded that the message could not have been delivered to Bibb before the closing hour of 6 o'clock, because there was no direction given as to where he could be found.

The message was not delivered to Bibb until 8 o'clock the next day, and Bibb sued for damages for a failure to deliver the message promptly. The telegraph company relied upon its rule as to Sunday business, as an exoneration of it from liability for failure to deliver the message sooner. In upholding the rule, this court said:

"The regulation of the telegraph company closing the office on Sunday, except during the hours named, was a reasonable and proper one."

In Western Union Telegraph Co. v. VanCleave, 107 Ky., 469, we said:

"We think it likewise competent for such companies to establish reasonable hours within which their business may be transacted; and they may fix those hours with reference to the quantity of business done. They may not be required to employ both a day and night messenger, if it be apparent that the business of the company will not justify such employment. This we understand to be the rule everywhere. Telegraph Company v. Harding, 103 Indiana, 505; W. U. Co. v. Wingate, 6 Tex. Civ. App., 394; W. U. Co. v. McCoy, Texas Civ. App., 31 S. W., 210.

"Under the proof on the point last named, the law is for the defendant, and a peremptory instruction should have been given."

Again, in Western Union Telegraph Co. v. Steenbergen, 107 Ky., 472, we said:

"The office hours of the company, where the message was to be delivered to the sendee, were from 7 o'clock a. m. to the same hour in the evening, and the message in question having been received during the night of the 19th, need not have been delivered until within a reasonable time after 7 o'clock on the morning of the 20th."

And, in Western Union Telegraph Company v. Crider, 107 Ky., 600, we again said:

"It seems to be well settled that telegraph companies may make reasonable rules and regulations for the conduct of their business, and may, where the volume of the business does not require it, or justify the expense, close their office for night delivery. Ordinarily, whether such a rule or regulation is a reasonable one, is a question for the court and not for the jury. And, certainly such is the law when, as in this case, there is no contrariety of testimony on the subject."

It is insisted, however, that a duty was imposed upon

appellant to inform appellee of its rule relied on herein; and, if it accepted the body for shipment, it should have delivered it upon its first arrival at London; and that it could not, under the facts of this case, have refused delivery after it had accepted the shipment, without having first explained to the appellee the reason why it could not so deliver the body. It can not be seriously claimed that so high a duty is required of a carrier in the case of a shipment of ordinary freight; and, in principle, we see no difference why the rule should be applied to a shipment of one class of freight and not to another. It was not explained to the appellant that the body would be demanded or could be received at London from the night train; and, acting under its rule of carrying it to the next night office, and returning it the next morning, the body reached London an hour and a half earlier than it would have reached that point if it had been held for the next morning's train.

The rule upon this subject has been stated in a note to Given v. W. U. Tel. Co., in 53 L. R. A., p. 733, as follows:

"The general rule is that, in the absence of a special contract to transmit a telegram immediately, or on express request for information as to its delivery, it is not obligatory upon a telegraph Company to acquaint a customer with the office hours of the company at the point to which a message delivered by him for transmission is directed."

The same general rule should be applied to express companies. They are held to the highest degree of responsibility in the carrying and delivery of freight. Their business can only be successfully conducted by delivering goods through their agents at their destination. An express company could not, for many reasons, undertake to deliver goods to whomsoever should claim them from the route agent. In the first place, the route agent could not possibly attend to the business in the limited time a train stops; and neither would he be justified in delivering goods to persons unknown to him. To require him to do so would put an end to a successful operation of the business. It necessarily follows, therefore, that such companies are justified in adopting reasonable rules and regulations that will secure the safe delivery of the goods shipped, to the true consignee. The regulation as to night offices in this case was a reasonable regulation that the defendant company might make.

The trial judge instructed the jury that if the defendant's agent at London had notice or knowledge on the evening before the arrival of the body at London, that it would reach there on the early morning train, and that plaintiff was there for the purpose of receiving it, and was ready, willing and able to pay the charges, it was the duty of the appellant to deliver the body to the plaintiff on its first arrival at London at 2 o'clock, a. m. Under our view of the law, this instruction did not properly present the law of the case. It not only failed to recognize the validity of defendant's rule as to night offices, but there was no evidence that defendant's agent at London had notice or knowledge on the evening before the arrival of the body at London, that it would be there on the train indicated in the instruction; on the contrary, not only was no arrangement made with the company, or its agent, either at London or Lexington, for the body to be put off at 2 o'clock in the morning, but there is no evidence that the agent at London knew that the body would be at London on the early morning train. He says he had heard that it would be down the next day, or the next morning; but no arrangement had been made with him whatever, or was it even suggested to him, that he should be at the night train to receive the body; and, it is clear that he understood, not, however, from any special notice or knowledge, but, in a general way, that the body would be there the next day, and not at midnight, or two hours thereafter. He further says he would have been at the 2 o'clock train to receive the body if appellee had requested him.

In instructing the jury that appellant was required to deliver the body to appellee upon its arrival at London, if its agent at London had notice or knowledge on the evening before the arrival of the body at London, that it would reach there on the early morning train, in the absence of any arrangement between the appellee and the appellant's agent that he would be there to receive said body, the court went further than the rule of the company justified it in going, since appellee could require that duty of the agent, only in case an arrangement had been made in advance between the appellee and the agent of the company. And, as it is not claimed that such an arrangement was made, the instruction was erroneous.

By the second instruction the court recognized the

controlling force of the company's rule governing its night offices, and specifically declared that the company might lawfully carry the body to Corbin and return it the next day, as it did; but it further directed that if the company negligently and carelessly set off the box containing the body on its trucks or platform at Corbin, and negligently and carelessly suffered and permitted the same to be exposed and remain on said truck or platform "in the hot sun until about 11 o'clock the next day," and that said body was thereby caused to, and did become decomposed solely by being so exposed, the jury should find for the plaintiff. The latter part of this instruction is not warranted under the evidence. While it is probably true that the 31st day of July was a warm day, there is no evidence upon that point, or, that the box containing the body was allowed to sit "in the hot sun," or at all, or for any length of time or that the sun was shining at Corbin. Neither is there any evidence as to the condition of the body when it was delivered to appellant at Lexington. We can not say this instruction was not prejudicial to the appellant's substantial rights although it was based upon facts which might have been true. In the absence of testimony upon that point, it should not have been given.

Appellant was justified, under its rule, in carrying the body to Corbin for delivery at London by the morning's train; but, if it was negligent in handling it at Corbin, or elsewhere, so as to thereby cause the decomposition complained of, it is liable. But, as heretofore stated, however, the record fails to show any such negligence upon the part of appellant.

Judgment reversed for a new trial.