No. 24,122.

J. E. BREWER and C. S. BREWER, Copartners, doing business under the firm name of J. E. BREWER COMPANY, *Appellants.* v. THE POSTAL TELEGRAPH CABLE COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

1. INTERSTATE NIGHT TELEGRAM—*Should Be Delivered Within Reasonable Time on Next Ensuing Day.* A telegraphic night message which under a rule of the telegraph company was not required to be delivered earlier than the next ensuing business day should be delivered on the following morning and within a reasonable time after the opening of business on that day.

2. SAME—*Gross Negligence in Transmission and Delivery.* A night telegram which on its face indicated the importance of prompt delivery was presented to the telegraph company for transmission, and the sender then informed the agent of the company of the urgency of the message and the necessity for delivery on the morning of the following day, and upon inquiry as to whether the wires were in working condition was told by the agent of the company that the wires were open and that the message would be transmitted and delivered as requested. The wires were not in working condition at the sending office and the message was sent by mail to an office where the wires were open and from there to the destination by wire, with the result that the message was not delivered until 11:10 a. m. of the following day and after the business to which the message related had been closed for that day, and by reason of the delay loss was sustained. *Held,* that the sending of the message by mail after informing the sender that it would be sent by wire, without informing him that the company could not send it by wire, and the resulting failure to deliver it on the morning of the next day, was palpable and gross negligence.

3. JURISDICTION—*Damages—Negligence in Transmitting Interstate Telegram —Recoverable in State Court.* An action to recover for the damages sustained from the delay in the delivery was properly brought in the district court of the state.

Appeal from Dickinson district court; CASSIUS M. CLARK, judge. Opinion filed January 6, 1923. Reversed.

*S. S. Smith*, of Abilene, for the appellants.

*G. W. Hurd*, *Arthur Hurd*, and *Bruce C. Hurd*, all of Abilene, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: J. E. Brewer & Company sued the Postal Telegraph Cable Company for damages resulting from the failure of the latter to properly transmit and deliver an interstate telegram. The case was submitted to the court, upon the pleadings, and the opening statement of counsel for plaintiff, and upon these judgment was ordered and given for the defendant. Plaintiff appeals.

In their petition plaintiffs alleged that on the evening of March 14, 1920, they filed with defendant a telegram, to brokers in Chicago, ordering the purchase of fourteen cars of eggs, four hundred cases to the car and thirty dozen to the case. When the telegram was filed and accepted, plaintiff told the agent of the defendant that it was an important message, asked her if the wires were open so that the message could be put through, and her reply was that the wires were in good working order and the defendant would be able to transmit the message at once. It appears that the wires were not in commission between Abilene and Topeka, and for that reason defendant sent the message by mail to its office at Topeka and it was sent from there to Chicago, and was not delivered in Chicago until 11:10 a. m. of the following day nor until the exchange where the eggs were to be purchased had closed. Plaintiffs further alleged that they relied on the statement of defendant that the wires were in order and that the message would be promptly transmitted, and further say, that, if they had been informed of the break in the wires, they could have sent the message by another telegraph company whose lines were in working condition between Abilene and Chicago. The failure to receive the telegram until after the close of the exchange and the advance in the price of eggs occasioned a loss to plaintiff of $1,680, and for that amount judgment was demanded.

The defendant answered and claimed that it had carried out its contract with plaintiff in accordance with the regulations established by the interstate commerce commission under the act of congress. The telegram filed was a night message, and it is claimed

that under the classifications and regulations applicable to such messages they are "accepted to be sent during the night and delivered not earlier than the next ensuing business day, at reduced rates, but in no case for less than twenty cents toll for a single message." There was no controversy as to the character of the message deposited and sent. It was a night interstate message and as to rates and regulations in its transmission and delivery, those established by the interstate commerce commission must control.

There is a dispute between the parties as to whether the telegram was accepted as a repeated message or an unrepeated one. On its face it was not marked to be repeated and there was a condition printed on the blank telegram used that "unless otherwise indicated on its face, this is an unrepeated telegram and paid for as such," in consideration whereof certain conditions and rates were applicable. Brewer, however, says that he directed that the telegram should be repeated and delivered not later than nine o'clock the next morning, and that he would pay the repeated message rate. The matter of repeating the telegram is not of great consideration in the present case, except as it may indicate its importance, as there is no claim that the message was not correctly transmitted as written. The real contention is that the defendant was negligent in transmitting it and that there was unreasonable delay in the delivery of the message, by which a substantial loss was occasioned to plaintiffs. According to the opening statement of plaintiffs' counsel, defendant's agent did not inform plaintiffs that the wires were down or that defendant could not put the telegram through, but did say that she would handle the message as an important one and put it through promptly. Further, that on the morning of March 15, at 8:30 a. m., plaintiffs inquired of the agent as to the message and she told them that she had not heard from it. Again at 9:30 a like inquiry was made by plaintiff and the agent again replied that she had received no information as to the message. A few minutes before twelve o'clock noon of that day a third inquiry was made and the defendant's agent stated that she had no information of the message. At about one-thirty on the afternoon of that day the operator informed the plaintiffs that the message had been repeated and that delivery had been made to the broker at 11:10 a. m. of that day. It appears that the hours for trading in eggs on the Chicago mercantile exchange is from 9:30 a. m. to 10:00 a. m. for spot sales and from 10:15 a. m. to 10:45 a. m. for future sales. The

sale under the order given to the broker would have come under the future trading period from 10:15 a. m. to 10:45 a. m., but the telegram was not received until after that hour and the eggs could not be purchased on the exchange until the following day. The market price for eggs on the next day was one cent per dozen more than on the 15th, and the delay and advance in price occasioned a loss of $1,680.

Defendant contends that its contract with the plaintiffs was actually fulfilled. This is based on the printed rule that night messages which go at reduced rates are to be sent during the night and delivered not earlier than the next ensuing business day. The telegram was not delivered until the business day for the purchase of eggs on the exchange had expired. While it was a night message, the words used apprized the defendant of its urgency and importance, and besides, its agent was expressly informed of the importance of having the message delivered early in the morning of the next day. As we have seen, plaintiffs inquired if the wires were open and in working condition and was informed that they were and that the message would be sent according to instructions. The wires were not open, and because of that condition the message was sent by mail to Topeka to be transmitted from there to Chicago by wire. By reason of the delay in transmission the message was not received until the exchange in Chicago had closed. To send the message by mail after assuring the plaintiff that the wires were open and that it would be promptly sent by wire without notifying the sender of the broken wires and of the delay there would be in transmission, was palpable and gross negligence. Reasonable classifications of messages into day, and night, and repeated and unrepeated ones, and regulations of rates for each, are not open to valid objections. The rules and regulations established and approved are to be reasonably interpreted. The contention that the rule for the delivery of a night message at any time on the next ensuing day cannot be sustained. It should have been delivered within a reasonable time on the morning of the next business day. (*Western Union Telegraph Company, v. Van Cleave*, 107 Ky. 464; 26 R. C. L. 563.) What is a reasonable time for delivery depending of course on the volume of business of the company, the messenger service ordinarily required for its business, and the hour when business begins at the place to which it was sent, but the failure to deliver the message after the business to which it related had closed

for the day was not within a reasónable time. It at least should have been delivered during the period the exchange was open for the purchase and sale of eggs.

There is a suggestion that as the telegraph business was under federal control the action could only be brought in the federal court. There is no ground for this contention. Such an action may be brought in a state court of general jurisdiction where service upon the defendant can be obtained. When so brought the rules laid down by the federal supreme court interpreting the act of congress and the regulations of the interstate commerce commission are of course controlling.

The judgment is reversed and the cause remanded for a new trial.