WESTERN UNION TELEGRAPH COMPANY V. MRS. T. J. HARGROVE.

Delivered June 13, 1896.

**Telegraph Company—Non-Delivery of Message—Liability.**

Where a telegraph company received a message to be delivered three miles beyond S., a railroad station, with payment in advance for special delivery thereof, it was liable for failure to deliver the message, although its agent receiving it for transmission was mistaken in supposing the company had an office at S., the sender not having been notified of the mistake.

APPEAL from Tarrant.   Tried below before Hon. W. D. HARRIS.

*Stanley, Spoonts & Thompson,* for appellant.

*Bowlin & Bowlin* and *Parker & Harris,* for appellee.

HUNTER, ASSOCIATE JUSTICE.—This suit was brought by appellee to recover damages from appellant for failing to deliver the following message:

"March 18, 1893.

"To Mrs. T. J. Hargrove, Smithfield, Texas.

"Daniel is very sick.   Come at once.

"Maggie."

Maggie, the sender of the message, was the wife of Daniel Hargrove, and the Daniel referred to in the message was her husband, and son of the addressee Mrs. T. J. Hargrove.   Daniel Hargrove was then dangerously ill with pneumonia on his farm about two and one-half or three miles from Granbury, in Hood County, Texas, and continued to grow worse until, on the morning of the 23rd of March, 1893, he died.   His mother, the addressee, resided at her home in the country, about three miles from Smithfield, in Tarrant County, Texas.   Smithfield is a small station on a railroad leading out from Fort Worth, about ten or twelve miles east of Fort Worth, but the appellant at the date of said message had no telegraph office at said station.

The message was delivered to the appellant's agent and manager at Granbury, in Hood County, Texas, a distance of about forty miles southwest from Fort Worth, but the sender of the message lived in the country on her farm two and one-half or three miles from Granbury.   Appellant's said manager at Granbury received the telegram from James Pilkinton, to whom Mrs. Maggie Hargrove, the sender, delivered it; and the manager testifies, and we find, that the man who delivered it told him that "Mrs. T. J. Hargrove lives two or three miles from Smithfield, in Tarrant County, Texas, and that he wanted the message delivered to her at her residence; that he paid him 50 cents for the transmission of the message, and $2.50 for special delivery of the same from Smithfield to her home in the country."   He says:   "I advised him that this would be about the amount

required to secure a special delivery of the telegram. At the time I received the telegram I was under the impression that the Western Union Telegraph Co. had an office at Smithfield, Texas, but after the party who left the telegram at the office to be sent had gone we received a message from Fort Worth informing us that the company did not have any office at Smithfield at all, and I immediately went out into town to see if I could find the party who left the message at the office for transmission and delivery, as I desired to inform him of the fact that the Western Union Telegraph Co. had no office at Smithfield, and therefore I could not send the telegram. I inquired of quite a good many people as to who the man was, but was unable to ascertain either his name or for whom he acted or for whom he was sending the telegram, and was unable to advise him of the fact that we had no office at Smithfield, and was unable to return him the tolls which he had left with me. I did not know the party who left the telegram, he being a perfect stranger, and I have never seen him since. I held the money which I had received from him for some time, and then forwarded it to the treasurer of the Western Union Telegraph Company at New York."

On cross-examination he stated: "I had a book in the office when I received the telegram which contained the names of all the Western Union Telegraph offices in the United States at the time said book was issued. * * * I could have ascertained by looking in that book whether there was such a telegraph office on the line of the Western Union Telegraph Company as Smithfield, if it had been in existence at the time the book was published; but I did not do so, as I was very busy, and the telegram was handed me addressed to Smithfield, and I naturally supposed we had an office at that point. * * * It was a mistake on my part. I did not attempt to inquire of the party who left the telegram as to his address or where he could be found, or as to the purpose of the telegram which he was sending. He simply told me that he wanted the telegram sent to 'T. J. Hargrove, Smithfield, Texas,' and paid what was required for sending and delivering it. The man who brought me the telegram never told me there was any office at Smithfield. I made no inquiry as to who Maggie or Daniel, the names mentioned in the message, were, or where they lived, and did not care to know. I had all the information I wanted. The man never refused to tell me, and I never asked him anything about it."

The message was never delivered to the addressee, nor was the sender ever notified of the failure to deliver, or that the company had no office at Smithfield. It was transmitted to Fort Worth, when that office returned answer that the company had no office at Smithfield, and no further effort was made to deliver the message to the addressee.

The manager of the company's office at Fort Worth testified, and we find, that neither the Western Union Telegraph Co. nor any other telegraph company had an office at Smithfield, in Tarrant County, Texas, at the date of the message, and that it was impossible to transmit the message by electricity, and there was no telephone connection with

Smithfield; that Smithfield was ten or twelve miles from Fort Worth; that a railroad runs from Fort Worth to Smithfield; that a person could have gotten on the train at Fort Worth and carried the message to Smithfield in an hour or two; that it would have cost about 75 cents to have made the trip; that he could have sent it through the country, but it was not addressed to Fort Worth, and the manager therefore concluded that the company was under no contract duty to send it from Fort Worth and deliver it from there; that the company did deliver telegrams outside of the free delivery limits, sending them out in the country from Fort Worth, but that is done only when the telegram itself is addressed to Fort Worth and a special delivery charge is collected to pay for such special delivery beyond free delivery limits. He knew where Smithfield was; had passed through it once on the train.

The record also discloses that Grapevine is one of appellant's telegraph stations in Tarrant County, and that it was about five miles from the addressee's residence. It is also shown that James Pilkinton and Daniel Hargrove were well known in Granbury, and that by proper inquiry either could have been easily found and the message and money returned. If this had been done, Mrs. Daniel Hargrove could and would have sent her mother-in-law information of her husband's dangerous illness by other means. She could have written her, or could have sent a telegram to Grapevine to James Hargrove, another son of Mrs. T. J. Hargrove, who lived at Grapevine. She did send a message to him the morning her husband died, and he it was who let the mother know of Daniel's dangerous illness, when she started immediately to see him, but arrived after his death, in time, however, to be at his funeral, as it was delayed for her arrival.

If the telegram had been delivered, the appellee would have gone at once to her son, and would have been with him during three or four days before his death. He was conscious until the last day, and often called for mother. Her grief and mental anguish caused by her failure to be at his bedside during his last days on earth were very great, so much so that the amount of the verdict of $600 is sustained by the evidence, if the appellant is liable at all for more than the toll paid to it.

The appellant complains of the charge of the court in its first and second assignments of error, which are as follows:

First. "The court erred in that portion of its charge wherein it instructed the jury, that in the event the defendant ascertained that it could not deliver the telegram by the exercise of ordinary care and diligence, it was the duty then to promptly notify the sender of the message of such inability, and that if the jury found that the defendants failed to do so, and that on account of such failure the plaintiff was not informed of her son's illness, and was deprived of being present at the last sickness and death of her son, it would be the duty of the jury to find for the plaintiff."

Second. "The court erred in the following portion of its charge to the jury: 'The fact that the agent of the defendant was of the opinion

or supposed that there was a telegraph office at Smithfield at the time he received the message, when in fact there was none at said place, and did not discover his mistake until after it had been received, would not excuse or relieve the defendant from the exercise of ordinary care, caution and diligence to transmit and deliver the message to plaintiff; but the fact, if you believe it was a fact, that the agent was mistaken, and the fact that there was no office at Smithfield, may be considered by the jury, together with the other evidence in the case, in determining whether or not the defendant was guilty of negligence in not delivering the message to the plaintiff.' "

The third assignment of error complains of the refusal of the court to give the following charge asked by appellant: "You are instructed by the court that the defendant is not required by law to transmit and deliver messages to points not reached by its lines, or where the defendant can not, by its agents and appliances, make delivery. If you believe from the evidence that the message in question was delivered by the sender to the defendant's receiving office at Granbury, to be transmitted by telegraph to Smithfield, Texas, and there delivered to the person to whom it was addressed, by special messenger, and that the sender of the said message and the agent or employe of the defendant who received said message for transmission believed at the time that there was a telegraph line and delivery office and facilities for the transmission of messages by telegraph from Granbury to Smithfield, and the contract for transmission and delivery was entered into with this belief and understanding, and if the evidence shows that there was not in fact any such delivering office then at Smithfield and no means or facilities available to the defendants for transmitting such message by telegraphic means to Smithfield, Texas, and that the defendant and sender were ignorant of the fact, and that said contract to transmit and deliver would not have been entered into if it had been known that there were no means for delivery by telegraph at Smithfield, and no delivering office or facilities at Smithfield, you are instructed that such mistake of fact will and does excuse the failure of the defendant to transmit and deliver said message to plaintiff, and you will find for the defendant."

Appellee alleges in her petition, that in consideration of three dollars paid to appellant, it undertook and agreed to deliver the message in question, which it then and there accepted, to her at her home three miles from Smithfield, in Tarrant County, Texas, and that it failed to do so, and that by reason thereof she was damaged, etc.

Appellant seeks to avoid liability by alleging and proving that it had no office at Smithfield, of which fact its agent was ignorant, and that its agent entered into the contract by mistake, and that he had no authority to accept the message and undertake to transmit it, unless it was addressed to a place where it or some other connecting telegraph company had an office; that while it sometimes delivers messages in the country beyond its free delivery limits, yet it was not organized nor is it equipped for doing so; that it was organized to transmit messages by

electricity, and that it would have cost it over a thousand dollars to erect poles and a wire, and deliver this message in that way; that its agent diligently sought and inquired for the man who delivered the message to it, and the sender thereof, but could not ascertain who they were nor their whereabouts, and hence could not inform them of its inability to deliver the message.

We are of opinion that the contract to deliver the message to Mrs. Hargrove at her residence three miles from Smithfield, in Tarrant County, was a valid contract, and one that was binding on the company, and it makes no difference whether it had an office at Smithfield or not. It was its duty to know and to keep its agents informed of the places where it had offices, and its agent should have informed the sender that it had no office at the place addressed; but instead of this, its agent misled the sender by accepting the message and agreeing to deliver it, and then failed to correct the mistake, which he could have done in ample time to have avoided the injury. The fact that the agent did not know the sender, or where to find her, is no excuse for its failure to notify her of its declination to perform its contract. It was his duty to inquire of the party delivering the message and obtain from him the necessary information to enable the company to do its duty fully in the particular case, and the failure to do so was culpable negligence.

In Telegraph Co. v. Harding, 103 Ind., 511, the Supreme Court of Indiana uses this language: "It might well be that in a case where a message was delivered, which showed upon its face the importance of speedy transmission, and other means of making the communication were available to the sender, which might be resorted to if he was informed that the one chosen was ineffectual, or his conduct might otherwise be materially controlled thereby, the company would be bound at its peril to ascertain and disclose its inability to serve him, or render itself liable to respond in damages." s. c., 10 A. & E. Corp. Cas., 617.

As to the duty of the company's agent to make inquiry and obtain information, we cite the opinion of our Supreme Court as expressed by Judge Henry in the case of Telegraph Co. v. Adams, 75 Texas, 535, where the following language is used: "When the general nature of the communication is plainly disclosed by its terms, instead of requiring the sender to communicate to the unwilling ears of the busy operator the relationship of the parties concerned, a more reasonable rule will be, when the receiver of the dispatch desires information about such matters, for him to obtain it from the sender, and if he does not do so, to charge his principal with the information that inquiries would have developed."

But we are clearly of the opinion that it was the duty of the appellant to deliver the message. It had no right to return it and decline to deliver. It had received the consideration, and undertook to deliver it. The contract was completed, the minds of the parties had met, and it

was fully performed on one side.    It remained for the company to perform its part.

It is true, it seems, that the agent was mistaken about his principal having an office at Smithfield, but it cannot escape the liability incurred by its agent's mistakes of this character, when his mistake was due to his negligence in not being informed about the details of his principal's business.    Kerr on Fraud, 405-6; 2 Pomeroy Eq., sec. 839; Telegraph Co. v. Buchanan, 35 Ind., 429.

It was not impossible for it to perform its part of the contract, for it had two offices in Tarrant County, one within ten or fifteen miles of the residence of the addressee, and the other within five miles of her residence.    But we do not base our decision upon the ground that it could have easily, quickly and cheaply delivered the message, but upon the ground that it had contracted to deliver it by special delivery to the addressee at her residence in Tarrant County, three miles from Smithfield, and we can see no reason why it should not in law and justice be held to the strict performance of its contract, just the same as is required of other persons.    Telegraph Co. v. Broesche, 72 Texas, 654.

We are therefore of opinion that the charge complained of in the second assignment of error was correct, while the one asked by appellant was not, and was correctly refused by the court; and while we do not all fully approve the charge complained of in the first assignment of error, the evidence so clearly establishes liability of the appellant, that no other verdict could in our opinion have been sustained than the one found by the jury, even under a perfectly proper charge.

Finding no reversible error in the judgment, we order that the same be in all things affirmed.

*Affirmed.*