WESTERN UNION TELEGRAPH COMPANY v. J. L. CARTER.

Decided June 23, 1900.

**1. Telegram—Delivery Beyond Line—Contract—Agent—Authority.**

Where the agent of a telegraph company had authority to contract to deliver a message beyond its lines for extra compensation, an agreement to forward it by mail to the postoffice of the addressee, and secure its special delivery beyond that point was not for such unusual means of delivery as to be beyond the apparent authority conferred, and the company was liable for failure to secure such special delivery from the postoffice, though it was shown that the agent had no authority to contract for that form of delivery.

**2. Telegram—Nondelivery—Negligence.**

Where a telegram of which defendant had undertaken to make personal delivery was merely sent by mail from the telegraph office nearest to addressee, this was not delivery as contracted, and it was not proper to submit any issue as to negligence.

**3. Charge—Harmless Error.**

Refusal of a correct charge as to effect of notice of agent's want of authority was harmless error where the charge given was more favorable to the party than the one requested.

APPEAL from Cooke. Tried below before Hon. D. E. BARRETT.

*Wilkins, Vinson & Batsell* and *Geo. H. Fearons,* for appellant.

*Culp & Giddings,* for appellee.

CONNER, CHIEF JUSTICE.—This is an appeal from a judgment in favor of the appellee in the sum of $750 as damages for the failure to transmit and deliver the following telegram: "Duncan, I. T., February 21, 1899. To J. L. Carter, Woodbine, via Gainesville, Texas: Your sister is very sick. Come at once. J. T. Honea."

Appellant had an office and telegraph station at Duncan, Indian Territory, and in Gainesville, Texas, but none at Woodbine. Woodbine was an inland village about eight or ten miles from Gainesville, and J. L. Carter lived a mile and a half distant therefrom. J. T. Honea was the husband of Carter's sister referred to in the telegram. J. T. Honea lived some sixteen miles in the country from said Duncan.

The telegram was delivered to the agent of appellee at Duncan through the agency of one Green. Green testified: "I went to Duncan, I. T., on February 21, 1899, and sent a telegram to J. L. Carter to come at once; that his sister, Mrs. J. T. Honea, was lying at the point of death. I went at the request of J. T. Honea and sent the message to J. L. Carter near Woodbine, Texas. I gave the agent the message and told him

to send it. I went in and told him I wanted to send a telegram to Woodbine, Texas, to J. L. Carter. I think he asked me if there was a depot there, and I told him that I didn't know. I asked him if he couldn't tell, and he got a book and after looking through it told me that there was no telegraph office there. I told him then he had better send it to Gainesville, and send it from there by mail. He said it could go out by mail that day at 10 o'clock. At first talked about having the telegram sent from Gainesville out to him, and I told him we better send it out to Woodbine by mail and then send to him from there, and he asked me what I thought it would be worth, and I told him I didn't know. We finally agreed on 75 cents as the delivery charges from Woodbine, and if this was not enough he was to notify me and I was to pay him the balance. * * * I told him to send the message with all charges paid, and he said he would. * * * I paid for the message. I gave the operator one dollar. It was for the message and for its delivery from Woodbine, as I have stated. The message was delivered to the agent about 4 o'clock in the morning."

The telegram was promptly sent to Gainesville, it not appearing, however, that any instructions accompanied it. On its arrival at Gainesville it was deposited by the agent of appellant there in the postoffice properly sealed in an envelope directed to J. L. Carter, Woodbine, Texas, but without delivery stamp or indorsement of any kind indicating the nature of its contents. It duly arrived at Woodbine on the mail of that day about 12 m. No notice was given the postmaster at Woodbine or to any other person requesting delivery, nor was any other effort made whatever to further insure its prompt delivery to J. L. Carter. J. L. Carter had long lived in the neighborhood, and was well known. Had there been a special delivery stamp placed upon the envelope, or had it been so indorsed as that the nature of its contents could have been known, the postmaster, who well knew Carter, testified that he would have seen to its immediate delivery. The message was, however, not in fact delivered until several days thereafter, when a neighbor of Mr. Carter having called for and received his mail at Woodbine, took it to him; appellee at the same time receiving a letter from his brother-in-law, J. T. Honea, informing him of the death and burial of his sister, her death having occurred on the evening or night of the day on which the telegram was sent.

Had the telegram been promptly delivered, J. L. Carter would have been enabled to take a train passing Woodbine at about 5:30 o'clock p. m., and to have arrived at Duncan and at the residence of J. T. Honea that night; too late, however, by about an hour to have seen his sister before her death, but in ample time to have seen her and to have attended her funeral services and burial. Mrs. Honea was J. L. Carter's only living relative. He was attached to her, and suffered disappointment and sorrow on account of not being at his sister's death and burial.

The principal question presented by the assignments of error relates

to the authority or want of authority, as alleged, in appellant's agent at Duncan to execute the contract of transmission and delivery hereinbefore stated. Appellant's superintendent testified that said agent had no such authority, and it is insisted that it was not within his apparent authority, and this is the principal contention in the case. It is matter of common knowledge that contracts for the transmission and delivery of telegrams by and on behalf of telegraph companies are generally, if not uniformly, made by the receiving or transmitting agent. Generally such contracts extend to the transmission and delivery of telegrams to points on the line of the company, and the power and authority to do this, in accord with the usual custom, is not questioned. Nor do we think it can be more successfully questioned that such agents may, for their principals, contract to transmit and deliver telegrams to points beyond or more or less remote from its line, upon such reasonable extra compensation as may be agreed upon. Thus, it has been held that for an agreed charge higher than the customary rate, a contract to have the message repeated is valid, as likewise one to absolutely insure delivery of the message, or to deliver to a point beyond its route. See Gray on Com. by Tel., secs. 30, 31, 32; Scott & J. on Law of Tel., sec. 273; Jones v. Roach, 51 S. W. Rep., 549; Telegraph Co. v. Hargrove, 36 S. W. Rep., 1077.

In this latter case it was held that the telegraph company was liable for a failure to deliver a message which it received with the pay therefor to be delivered three miles beyond the village of Smithfield, though the agent receiving it for transmission was mistaken in supposing the company had an office at Smithfield. In the case of the Western Union Telegraph Company v. Evans, 23 Southwestern Reporter, 998, where the addressee of the telegram, in anticipation of its receipt, informed the delivering agent that he expected a message from his father calling his mother and himself to the bedside of a sick brother, and where the agent agreed to deliver the message to a person residing near the telegraph office, who was to take it to the addressee, it was held that the agreement of the agent was within the scope of his authority and constituted a part of the contract with the telegraph company for transmission and delivery.

In view of these authorities and the evidence, we think it must be held that the contract made in this case for the delivery of the telegram to Carter was authorized, and that appellant was liable for its breach. We think it certainly within the scope of the apparent authority of the receiving agent. He was authorized not only by the law, as we have seen, to receive messages and hence contract for transmission to points beyond its line, but also by the rules and regulations of the appellant company. These rules expressly provided for the delivery of such messages upon the payment of extra compensation therefor, the company obligating itself that such extra compensation for the payment of the means of special delivery should be reasonable, the superintendent of the appellant company also testifying to such effect. As it appears in the record, the

telegram here in question was not accompanied with any limitation of the liability of the company. It does not appear that it was upon the regular blank of the company, containing the usual conditions. Nor has it been made to appear that Green was notified by the receiving agent of appellant that there was any rule or regulation forbidding him to make the contract exactly as made. It seems to us that the power and attending liabilities to contract for the delivery of telegrams at points beyond its line necessarily includes the power of selecting the means by which such telegrams may be transmitted from the terminal point on the line to the point of actual delivery as agreed upon. The contract as received and as appears in the record was for absolute transmission and delivery. See Anderson v. Telegraph Co., 84 Texas, 17; Telegraph Co. v. Hargrove, supra. In the absence of notice to the contrary, the sender had the right to assume that the company or its agents would select or agree to such agencies only as would, within the usual course of business, insure and facilitate the delivery of the telegram in question.

It is doubtless true that such unusual or extraordinary means of transmission might be suggested and agreed to as that notice of a want of authority in the sending agent would be imputed by the law. But, in our judgment, the selection of the mail as a transmitting agency in part, under the circumstances of this case, was not such extraordinary or unusual means as would have this effect. The parties knew the time of departure of the mail from Gainesville, the distance to Woodbine, and, imputedly, that if promptly delivered from there, Carter would have ample time to take the first train for Duncan. It is matter of common knowledge that the mails are generally efficient. It does not appear that the selection of any other special agency or messenger would have more certainly served the purpose. The trouble was not in the mail, nor in a refusal by the authorities in charge thereof to permit the withdrawal of the letter from the postoffice at Woodbine for further transmission. On the contrary, we are authorized to infer that had any kind of notice been given the postmaster of the importance of the message, he not only would have permitted, but would himself have seen that it was forthwith sent to appellee. Appellant's contract was, by the use of such undetermined means as was reasonably sufficient to effect the purpose, to see that the message upon its due arrival at Woodbine was promptly transmitted from there and delivered to appellee.

Other assignments have been examined, but we find nothing therein requiring more than a passing notice. In view of the correction made by the court and of the fact that no complaint is made of the verdict on the ground of its being excessive, we see no reversible error in the remarks of counsel for appellee complained of. Nor do we find reversible error, as asserted in effect in the fourth assignment, that the court omitted to submit the issue of negligence in the transmission and delivery of the message sued on, but made the liability of appellant depend upon the fact of nondelivery and the want of apparent authority in the agent. It was undisputed that the telegram was not delivered as agreed

upon. No unavoidable cause for such failure was plead or shown. It affirmatively appeared that no effort, other than the deposit of the telegram in the postoffice at Gainesville, was made to deliver, and hence there was, in no event, error on the part of the court in the failure to submit the issue. Nor do we think there was error in refusing special charge number 2 requested by appellant. If the act and agreement of the receiving agent at Duncan was not within his actual or apparent authority, as was admitted by the court, then appellant was not liable, irrespective of whether Green, the delivering agent, had or did not have notice thereof. The issue of notice was therefore immaterial.

No error appearing, the judgment below will be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.