### WESTERN UNION TELEGRAPH COMPANY v. JAMES B. SORSBY.

Decided May 31, 1902.

**1.—Telegraph Company—Negligence—Connecting Line.**

Where, by the contract of transmission, the telegraph company was to transmit the message by telegraph to a point not on its own line, and its liability was limited to its own line, and the message was delivered by it to the connecting line, its failure to transmit it to the addressee at destination by mail or telephone, on ascertaining that the connecting line was not working to that point, did not render it liable as for negligence.

**2.—Same—Forwarding by Mail—Charge.**

A message was addressed to a point on a connecting line, and defendant company delivered it to such connecting line, and discovered that the line was not in order. Plaintiff sought to recover on the grounds of failure to send to destination by mail or telephone, and of failure to notify defendant. The court overruled defendant's exception to the first ground. Held, that it was error to admit evidence in support of such first ground, and to allow argument in behalf of a recovery thereon, and the error was not cured by a charge limiting recovery to the second ground, and by addendum instructing the jury that they could not hold defendant liable for failure to transmit by mail or telephone.

**3.—Same—Duty of Notice to Sender.**

Where a telegraph company discovers, after accepting a message for transmission, that by reason of the disturbed conditions of its own line it can not perform its contract, the law imposes the duty to notify the sender, but this duty is not absolute, and arises only when ordinary prudence in the protection of the interests of the party concerned requires it.

**4.—Same.**

A telegraph company accepting a message, the importance of which it knows, for delivery at a point on the line of a connecting carrier, undertakes as the agent of the sender to deliver it to the connecting line, and where it ascertains, on delivering the message to such connecting line, that the latter can not promptly transmit it, it is its duty to notify the sender, and for its failure to do so it will be liable as for negligence.

Appeal from the          Court of Waller.  Tried below before Hon. Jno. M. Pinckney.

*Norman G. Kittrell,* for appellant.

*Hannay & Tompkins* and *J. V. Meeks,* for appellee.

GILL, ASSOCIATE JUSTICE.—J. B. Sorsby sued the appellant telegraph company for damages for failure to promptly transmit and deliver a telegram sent by W. Boulware on March 22, 1901, from Waller, Texas, to Sloan Jemison at Angleton, Texas, for plaintiff's benefit.  A trial by jury resulted in a verdict and judgment for plaintiff for $1000, from which the defendant has appealed.

The message was as follows: "Sloan Jemison, Angleton, Texas: Tell Jim Sorsby come at once.  Johnny very low.  Answer.  W. Boulware."

It was delivered to defendant's agent at Waller on the evening of March 22, 1901, for transmission by telegraph over its lines and connecting lines to the addressee at Angleton.  The message was prepared as a night message, as it would have subserved its purpose had it reached the addressee at any time before 12 m. of March 23d.  The defendant did not own a line into Angleton, but owned and was operating a line to Chenango Junction, from which point the Velasco Terminal Railway Company owned and operated a telegraph line into Angleton.  The message reached Chenango by 10 o'clock a. m. of March 23d, and was received by defendant's agent at that point, who was also the agent of the Velasco Terminal line.  The wires of the latter line were not in working order, and the message could not be transmitted by that means to Angleton in time for plaintiff to leave for Waller on the only train which he could have taken at that point in time to reach his sick brother before his death.  The message was sent from Chenango to Angleton on the 23d and was delivered to the addressee about 5 o'clock p. m.

The person mentioned in the massage as "Johnny" was the brother of plaintiff, and was very ill and died before plaintiff reached his bedside.  Had the message been promptly transmitted plaintiff would have been with his brother before the latter's death.

Angleton is three miles from Chenango Junction and defendant could have forwarded the message from that point by mail, or could have telephoned it in time, the two towns being connected by telephone.

Had defendant notified the sender of the fact that the connecting line was in no condition to receive it and promptly transmit it, the sender could and would have communicated with plaintiff by telephone in ample time for him to depart on the necessary train.  Defendant did not mail the message.  Did not telephone it nor adopt any other means of forwarding it in time and did not inform the sender of the condition of the connecting line.

Plaintiff sought to recover upon three grounds, (1) because the defendant was negligent in failing to mail the message to Jemison when it was found that it could not be promptly sent over its connecting line; (2) because it failed to transmit the message by telephone when it discovered its connecting line was unable to handle it; and (3) because it failed to notify the sender of its inability to forward the message to its destination, and thus give the sender an opportunity to resort to the telephone or other means to reach plaintiff in time.

Defendant, after exceptions and general denial, pleaded that it did not own a line into Angleton, and had undertaken by its contract to do no more than to promptly transmit the message over its own lines and to deliver it to the agent of its connecting line, and in this respect it had performed its full duty.

It was also pleaded in defense that plaintiff had been guilty of contributory negligence, because by the use of a private conveyance he could have gone to a station on the International & Great Northern railroad and thus reached his brother before his death, and this he failed to do, and because the sender was guilty of contributory negligence in this: the message requested an answer, and when the sender failed to receive an answer within a reasonable time he should have known that his message had failed to reach the addressee and should have resorted to the telephone for the purpose of communicating with him.

Against each of the grounds of recovery relied on by plaintiff defendant urged a special exception questioning their sufficiency as a basis of liability. These were overruled by the court. When evidence was offered in support of them objection was interposed, but the court admitted the testimony, and defendant preserved the points by bill of exception.

When counsel for plaintiff was arguing the cause before the jury he discussed the failure of defendant to forward the message by mail or telephone, and urged those grounds as a basis for a verdict in plaintiff's favor. To this defendant excepted, and the exception being overruled, reserved its bill.

In his charge to the jury the court submitted as a basis of liability only the issue of defendant's negligence in failing to promptly notify the sender of the disturbed and useless condition of its connecting line, in an addendum to the charge, coming after the signature of the judge to the main charge, the jury were instructed that they could not hold the defendant liable for failure to transmit by mail or telephone.

Under the first and second assignments of error defendant complains of the action of the trial court in overruling the exceptions to the portion of plaintiff's pleadings in which the failure of defendant to mail or telephone the message from Chenango to Angleton was set up as negligence upon which liability could be predicated, and of the action of the court in hearing evidence in support of the allegations and permitting argument thereon.

We are of opinion the court erred in the respect complained of. That defendant did not own and operate a telegraph line from Chenango to Angleton is an undisputed fact in the case. This fact was not only pleaded as a defense, but may be said to have been disclosed by the amended petition. It is at least true that the contract for transmission as alleged plainly bound defendant to transmit the message by telegraph and there was no obligation either contractual or otherwise to use the mails or telephone. Had the defendant owned the line into Angleton and had found it unfit for use because of influences it could neither foresee nor control by the exercise of ordinary care, such facts, if shown, would have been a defense to a suit for failure to transmit. If the condition of the line was due to defendant's negligence, the use of the mails or telephone by it would have been no defense if damage had accrued, notwithstanding the effort to transmit the message by either one or both of those means. Neither of those means was selected by the sender, and defendant did not bind itself to use other than its established means to transmit the message.

But the error is more vital in another aspect of the case. The defendant did not contract to transmit the message to Angleton, but by a clause in the contract expressly limited its liability to its own lines, and undertook no more than as the agent of the sender to deliver the message to its connecting line. It had no control over the connecting line and was in no way responsible for its condition when the message was tendered it at Chenango. Notwithstanding this the court, by hearing evidence and argument on the issues, permitted the jury to regard them as a basis for liability until the close of the case and the end of the charge, thus permitting them to become thoroughly imbued with the idea that the company owed plaintiff a duty in the respects mentioned.

Plaintiff seeks to meet these assignments in two ways: (1) By the contention that the failure of the company to mail or telephone the message from Angleton was negligence constituting a valid ground of liability and the error, if any, was against the plaintiff. (2) The error, if any, was harmless and fully cured by the charge of the court.

For the reasons already given it is clear that the court correctly submitted only one basis of liability, and plaintiff's counsel seem to have conceded this, as they do not appear to have sought to induce the court to submit any other.

In determining whether the error was harmless it is proper to look among other things to the entire charge of the court. We have already noted the respect in which the court sought to withdraw the improper issues from the consideration of the jury. In another part of the charge the court instructed the jury that "It was the duty of defendant * * * to have exercised ordinary care * * * to have promptly transmitted and made delivery of same to Sloan Jemison at Angleton, Texas, on the morning of March 23d. * * *" Thus in effect keeping before the jury the issues complained of. We have already seen that

defendant had undertaken no such duty and it was not a duty which under the circumstances of this case the law imposed.

Another feature which tended to accentuate its harmful character was the proximity of the towns of Chenango and Angleton. They were only three miles apart, and the fact that timely delivery could have been made by a resort to other means doubtless impressed the jury, as it evidently impressed counsel for plaintiff, and would naturally impress anyone. A messenger on horseback could have accomplished the delivery in a short time and with little trouble, and considering the nature of the message, it was such an act as one friend would voluntarily do for another or even for a stranger. But it must be borne in mind that this was a business transaction in which the company was not bound to respond to the dictates of kindness or sentiment. It was equipped to transact its affairs in a certain way. Its agents were doubtless clothed with a restricted authority in expending the means of the company in furtherance of its undertakings. The defendant had the unquestioned right to have the jury clearly instructed as to its duties and liabilities and to have the minds of the jury kept free from the influence of evidence or argument which had no legitimate bearing on the issue of liability. This right it persistently sought to secure at every stage of the trial. Counsel should never be permitted to discuss facts not in the record. How much more harmful must be the combined effect of the discussion of facts and circumstances improperly in the record and having the apparent approval of the court up to the last moment.

That such is reversible error and is not cured by a charge withdrawing the objectionable matter from the consideration of the jury finds ample support in the decisions of our own courts. Railway v. Levy, 59 Texas, 543; Tucker v. Hamlin, 60 Texas, 171; McCauley v. Long, 61 Texas, 74; Smyth v. Caswell, 67 Texas, 567; Railway v. Langston, 48 S. W. Rep., 610.

By the fourth assignment it is contended that the defendant owed no duty to advise the sender of the condition of the connecting line. To this proposition we can not assent. It seems to be fairly well settled that if a telegraph company discovers, after accepting a message for transmission, that by reason of the disturbed conditions of its own lines it can not perform its contract, the law imposes the duty to notify the sender. 25 Enc. of Law, old ed., p. 779; Telegraph Co. v. Harding, 103 Ind., 505; Scott & Jarnigan, Law of Telegraphs, secs. 201, 202.

This duty, however, is not absolute, but arises only when ordinary prudence in the protection of the interests of the party concerned requires it. Telegraph Co. v. Davis, 51 S. W. Rep., 258.

Now, in the case at bar the company undertook to do more than transmit the message to Chenango. It also undertook as the agent of the sender to deliver it to the connecting line. Delivery involves an acceptance by the party to whom delivery is tendered. If the message had been declined by the connecting line, it would have been the clear duty of defendant as the agent of the sender to advise its principal of the

fact. Defendant knew of the importance of the message, and ought not to be permitted to allow the sender to rest in ignorance of facts within the knowledge of defendant which if known to the sender would have enabled him to adopt means to avert the damage which might otherwise result. In the case at bar the company secured from its connecting line only a modified acceptance; that is to say, an acceptance with no promise of prompt transmission as contemplated by the sender. The connecting line discharged its duty by advising defendant as the agent of the sender that it could not transmit the message at once, and refusing to undertake to do so. It was not at fault, and against it the plaintiff could have no just complaint. But the law imposed on defendant in its capacity as agent of the sender the duties which the sender might reasonably assume as included within the scope of the agency, and surely it is the duty of an agent, sent to make delivery of a thing, to advise his principal that the person to whom it is consigned refuses to accept, or declines to accept on the terms made by the sender. We think the transaction before us comes easily within the principle announced in the authorities cited in this connection. Defendant contends, however, that in so holding we require something to be done without remuneration. To this we answer, if the contract to transmit and deliver to the connecting line comprised this duty also, the charges will be presumed to be commensurate with the duties undertaken.

The evidence tends to show that the agent of the connecting line expected the wires to be restored to working condition at any moment, but had no means of knowing with certainty how long the conditions would continue. This the defendant knew, and the question is one of ordinary care. The court correctly submitted the issue to the jury and the assignment is overruled.

The assignment that the court erred in refusing to submit the defence of contributory negligence is well taken. The pleadings and the evidence raise the issue, and a special charge addressed to the point was asked and refused.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*