### WESTERN UNION TELEGRAPH CO. v. CARTER.

(Court of Civil Appeals of Texas. Austin. March 26, 1913.)

1. TELEGRAPHS AND TELEPHONES (§ 55\*)—ACCEPTANCE OF MESSAGES BEYOND LINES—OBLIGATION.

   A telegraph company need not accept a message for a point beyond its own line and to a point where it has no office or facilities for delivery, and a suggestion by its agent that a messenger fee will likely be necessary to deliver a message to a sendee residing in the country and requiring a guaranty of such a fee before delivery of the message to a connecting telephone company do not create a special contract

binding the telegraph company to deliver the message beyond its own line.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 23; Dec. Dig. § 55.*]

2. TELEGRAPHS AND TELEPHONES (§ 55*) — NEGLIGENCE IN DELIVERY OF MESSAGES—LIABILITY.

A telegraph company is relieved from liability for negligence occurring on its connecting line in the delivery of a message resulting in injury to the sendee, unless otherwise bound by special contract.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 23; Dec. Dig. § 55.*]

3. TELEGRAPHS AND TELEPHONES (§ 55*)—LIMITING LIABILITY—CONTRACTS—VALIDITY.

A stipulation on a message that the telegraph company is merely the agent of the sender, without liability, in forwarding it over the lines of any other company necessary to reach its destination, is reasonable and valid, and where a message is sent subject to the stipulation, the initial company is protected against liability for the negligence of any connecting company to which the message is transferred.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 23; Dec. Dig. § 55.*]

4. TELEGRAPHS AND TELEPHONES (§ 55*)—SPECIAL CONTRACTS—ACTS CONSTITUTING.

The mere suggestion by an agent of a telegraph company receiving a message for transmission beyond the company's lines that a messenger fee will be necessary and the requiring by him of a guaranty of a fee before a delivery of the message to a connecting line for delivery to the sendee do not create a special contract binding the initial company to deliver the message in any event, and do not make it responsible for the negligence of the connecting company in failing to deliver it.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 23; Dec. Dig. § 55.*]

5. APPEAL AND ERROR (§ 1175*)—DISPOSITION OF CASE ON APPEAL.

Where the evidence fails to show liability against defendant and the case has been fully developed, the court on appeal from a judgment for plaintiff will reverse the judgment and render judgment for defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Appeal from District Court, Milam County; J. C. Scott, Judge.

Action by John L. Carter against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Hume & Hume, of Houston, and Geo. H. Fearons, of New York City, for appellant. U. S. Hearrell, of Cameron, for appellee.

RICE, J. This suit was brought by appellee, plaintiff below, against the Western Union Telegraph Company and the Southwestern Telegraph & Telephone Company, to recover damages for mental anguish suffered on account of their failure to deliver to him a telegram announcing the death of his father and stating the time of burial whereby he was prevented from attending the funeral.

Recovery was sought against the Telegraph Company chiefly on the alleged ground that it had contracted to locate and deliver said message to him, appellee. The Telegraph Company, after a plea of contributory negligence, mainly relied upon the theory that it had exempted itself from liability for default occurring on its connecting line by a stipulation indorsed on said message as follows: "This company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other company, when necessary to reach its destination." There was a jury trial, resulting in a verdict and judgment in favor of appellee against the Telegraph Company, but in favor of the Telephone Company, from which appellant alone has appealed.

The facts show that on the morning of the 20th of June, 1910, the father of appellee died at his home near Madisonville, and that his stepmother caused to be filed with appellant at its office in Madisonville about 3 o'clock on said day the following telegram for transmission: "John Carter, Buckholts, Texas. Your father died this morning. Will be buried tomorrow. Answer." It was shown that appellant's agent, when said telegram was tendered it, informed Mr. Heaton, the agent of the sender, that it had no office at Buckholts, but that Buckholts was on a telephone line, and that it might become necessary, if appellee lived in the country, to pay a messenger fee to said Phone Company to deliver same; whereupon the agent of appellant was referred to a merchant, a friend of Mrs. Carter's, who guaranteed the payment of any such extra messenger fee. It appears that appellee lived in the country some eight miles from Buckholts, which was his post office address; that the message was promptly sent and received at Cameron, the end of appellant's line, where it was without delay delivered to the Telephone Company; but that said last-named company failed to deliver same to appellee. If this message had been delivered by the latter company during said day, he could have reached Madisonville in time to have attended the funeral of his father.

[1] The court refused a special charge requested by appellant to the effect that it had not been shown that it had agreed to do more than transmit the message from Madisonville to Cameron, and to forward same from said point over the line of the Telephone Company to Buckholts as the agent of the sender and plaintiff, and it not being shown that defendant Western Union Telegraph Company was negligent in the performance of this duty, the jury should find for it, which is made the basis of the 5th assignment. We think this charge should have been given. No obligation rested upon appellant to accept a message for points beyond its own line, and where it had

no office or facilities for delivery. 37 Cyc. 1664, par. 9; W. U. Tel. Co. v. Hargrove, 14 Tex. Civ. App. 79, 36 S. W. 1077.

[2] It is likewise true that it is absolved from liability for default or negligence occurring on its connecting line, resulting in injury to appellee (see Smith v. W. U. Tel. Co., 84 Tex. 359, 19 S. W. 441, 31 Am. St. Rep. 59; McCarn v. Railway Co., 84 Tex. 358, 19 S. W. 547, 16 L. R. A. 39, 31 Am. St. Rep. 51; Hunter v. Railway Co., 76 Tex. 195, 13 S. W. 190; Railway Co. v. Geer, 5 Tex. Civ. App. 349, 24 S. W. 86; W. U. Tel. Co. v. Sorsby, 29 Tex. Civ. App. 345, 69 S. W. 122, and authorities cited in foregoing cases), unless otherwise bound by special contract.

It is said in Jones on Telegraph & Telephone Companies, at section 446, that "by the analogy to the principle governing the liability of common carriers of goods, the general rule is that a telegraph company is not bound by law to accept and transmit messages beyond the terminus of its own line. In the absence of any agreement, either expressly or clearly implied, for transmission beyond its own line, the common-law duty of an independent company is performed when it safely transmits the message over its own line and delivers it promptly and correctly to the connecting line, and it is not therefore liable for any errors or delays occurring on the other line. If, in such case, the message is to be delivered by the initial line to a connecting line for further transmission, the former is considered as a forwarding agent and is not liable for the defaults of the subsequent line or lines." "Nor is its status changed merely by reason of the fact that, when a message is to be sent over a connecting line, the initial company receives from the sender all charges for transmitting the message for the entire route." Same author, § 448.

[3] In addition to this, it will be recalled that the message had a stipulation indorsed thereon to the effect that appellant was merely the agent of the sender, without liability, in forwarding the same over the lines of any other company, when necessary to reach its destination. The message was sent subject to this provision. Speaking with reference to such stipulations, it is, in effect, said in 37 Cyc. p. 1992, par. 6, that such stipulations are reasonable and valid, and will protect the initial carrier against liability for negligence on the part of any other company to which the message is necessarily transferred, citing a line of our own cases in note 70 thereunder in support thereof. See, also, Jones on Telegraph & Telephone Companies, where the same doctrine is announced.

[4] It is, however, contended on the part of appellee that, notwithstanding this nonliability for default occurring on a connecting line, it is nevertheless true that appellant can, by special contract, as here shown, bind itself to deliver the message, and become liable for failure so to do, even where the default occurred on its connecting line. The principle contended for may be conceded, but it is not applicable here, for the reason that we do not believe there is any evidence in the record going to show or establish any such contract on the part of appellant. The mere suggestion that a messenger fee would likely be necessary, and the requiring by it of a guaranty of such fee before delivery of the message to the Telephone Company, is not enough to create a special contract binding it in any event to deliver said message and become responsible for the negligent default of the Telephone Company in failing to deliver same.

[5] It seems that the case has been fully developed, and, the evidence failing to show liability on the part of the appellant, it becomes our duty to reverse and render the judgment in its favor, and it is so ordered.

Reversed and rendered.