# WESTERN UNION TELEGRAPH COMPANY *v.* DANT.*

---

TELEGRAPHS AND TELEPHONES; REGULATIONS; UNREPEATED MESSAGES; LIMITATION OF LIABILITY; TORTS.

1. The practice of telegraph companies to limit their liability for negli-

*Telegraph—Unrepeated Messages.*—As to validity of limitation of liability of telegraph company for unrepeated messages, see notes in 11

gence in the transmission and delivery of unrepeated messages is expressly sanctioned by the act of Congress of June 18, 1910 (36 Stat. at L. 545, chap. 309, Comp. Stat. 1913, § 8563), providing, with respect to commerce, that telegraph messages may be classified as, among other things, repeated and unrepeated, such messages having been well known before the passage of the act, and the United States Supreme Court having determined that such a limitation was reasonable so far as it affected the sender of the message.

2. A contract between a telegraph company and the sender of a telegram, limiting the company's liability for negligence in the transmission or delivery of an unrepeated message, is binding on the addressee, even where he sues in tort to recover damages for such delay. (Distinguishing *Fererro* v. *Western U. Teleg. Co.* 9 App. D. C. 455.)

No. 2669.  Submitted October 5, 1914.  Decided November 2, 1914.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia in favor of plaintiff in an action to recover damages for the alleged negligent failure of defendant promptly to deliver a telegram.

*Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal by the Western Union Telegraph Company, the defendant below, from a judgment for the plaintiff, Eve A. Dant, in an action for damages for the negligent failure of the defendant promptly to deliver a telegraphic message sent by a third party from this city to the plaintiff at New Orleans, Louisiana.

The message, written upon one of the defendant's printed blanks, is as follows:

Mrs. E. A. Dant,

Christian Woman's Exchange, South and Camp Streets,

New Orleans, La.:

See Estopinal Godchaux Building.  Buy Mileage.  Take day train.

(Signed) F. H. Tompkins.

L.R.A.(N.S.) 561 and 30 L.R.A.(N.S.) 409.  Upon the question of the applicability of stipulation as to repeating telegraph messages to failure or delay in transmission or delivery, see note in 28 L.R.A.(N.S.) 566.

Without unnecessary delay the message was telegraphed to New Orleans, but, through the negligence of the defendant, the name of the addressee was changed to "Mrs. E. H. Grant." This change caused delay in the receipt of the message by the plaintiff, to her damage.

At the trial the defendant offered to show that the face of the blank upon which the message was written bore this notice: "Send the following message subject to the terms on back hereof which are hereby agreed to;" and that on the back of the blank were printed, among others, the following terms:

"All messages taken by this company are subject to the following terms which are hereby agreed to.

"To guard against mistakes or delays, the sender of a message should order it repeated, that is, telegraphed back to the originating office for comparison. For this, one half the unrepeated message rate is charged in addition. Unless otherwise indicated on its face, this is an unrepeated message and paid for as such, in consideration whereof it is agreed between the sender of the message and this company as follows:

"1. The company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery, of any unrepeated message, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for nondelivery, of any repeated message, beyond fifty times the sum received for sending the same, unless specially valued; nor in any case for delays arising from unavoidable interruption in the working of its lines; nor for errors in cipher or obscure messages.

"2. In any event the company shall not be liable for damages for any mistakes or delay in the transmission or delivery, or for the nondelivery, of this message, whether caused by the negligence of its servants or otherwise, beyond the sum of $50, at which amount this message is hereby valued, unless a greater value is stated in writing hereon at the time the message is offered to the company for transmission, and an additional sum paid or agreed to be paid, based on such value, equal to one tenth of 1 per cent thereof."

The defendant then offered to show that the message in question was unrepeated and paid for as such.

The court rejected the contention of the defendant that the plaintiff's right of action, in the circumstances of the case, was limited and controlled by the terms of the undertaking between the defendant and the sender of the message. The correctness of this ruling forms the controlling question here.

*Mr. George H. Fearons, Mr. Nathaniel Wilson, Mr. Clarence R. Wilson,* and *Mr. Paul E. Lesh,* for the appellant:

The defendant's liability is limited by the stipulations contained in the contract blank on which the message was sent. (1) The stipulations limiting liability are valid. *Primrose* v. *Western U. Teleg. Co.* 154 U. S. 1; *Adams Exp. Co.* v. *Croninger,* 226 U. S. 491.   (2) The stipulations limiting liability are valid as against the addressee.   37 Cyc. 1695; *Ellis* v. *American Teleg. Co.* 13 Allen, 226; *Stone & Co.* v. *Postal Teleg. Co.* 31 R. I. 174; *Halsted* v. *Postal Teleg. Cable Co.* 120 App. Div. 433, affirmed in 193 N. Y. 293; *Russell* v. *Telegraph Co.* 57 Kan. 230; *Coit* v. *Western U. Teleg. Co.* 130 Cal. 657; *Western U. Teleg. Co.* v. *Waxelbaum & Co.* 113 Ga. 1017; *Western Union* v. *Van Cleave,* 107 Ky. 464; *Clement* v. *Western U. Tel. Co.* 77 Miss. 747; *Lewis* v. *Telegraph Co.* 117 N. C. 436; *Brown* v. *Telegraph Co.* 71 S. C. 506; *Manier & Co.* v. *Western U. Teleg. Co.* 94 Tenn. 442; *Western U. Tel. Co.* v. *Culberson,* 79 Tex. 65; *Western U. Teleg. Co.* v. *White,* 149 S. W. 790; *Whitehill* v. *Western U. Teleg. Co.* 136 Fed. 499; *Findlay* v. *Western U. Teleg. Co.* 64 Fed. 459; *Beasley* v. *Western U. Teleg. Co.* 39 Fed. 181; *Fererro* v. *Western U. Teleg. Co.* 9 App. D. C. 455.

*Mr. Daniel W. Baker* and *Mr. William E. Leahy* as *amici curiæ.*

*Mr. J. M. Chamberlin* and *Mr. Thomas M. Baker* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

The applicable portions of the act of June 18, 1910, entitled "An Act to Create a Commerce Court and to Amend the Act Entitled 'An Act to Regulate Commerce,' " etc. [36 Stat. at L. 545, chap. 309, Comp. Stat. 1913, § 8563], read:

"All charges made * * * for the transmission of messages by telegraph, telephone, or cable, as aforesaid, or in connection therewith, shall be just and reasonable, * * * *Provided,* That messages by telegraph, telephone, or cable, subject to the provisions of this act, may be classified into day, night, repeated, unrepeated, letter, commercial, press, government, and such other classes as are just and reasonable, and different rates may be charged for the different classes of messages."

It appearing that the business of the defendant is carried on between the States, as well as with foreign countries, and that the message in question was to be sent from this District to Louisiana, it is apparent that the above-quoted provisions of the act of 1910 at least control the relations of the sender of the message and the defendant. That the limitations printed on the message in question are reasonable and valid, so far as they affect the sender of the message, has been authoritatively determined. *Primrose* v. *Western U. Teleg. Co.* 154 U. S. 1, 38 L. ed. 883, 14 Sup. Ct. Rep. 1098. In that case the court observed: "By the regulation now in question, the telegraph company has not undertaken to wholly exempt itself from liability for negligence, but only to require the sender of the message to have it repeated, and to pay half as much again as the usual price, in order to hold the company liable for mistakes or delays in transmitting *or delivering,* or for not delivering, a message, whether happening by negligence of its servants or otherwise."

That messages such as the present, passing over telegraph lines extending through different States, or from one State or district to another State or district, constitute a portion of commerce itself, and hence, when exercised, subject to the exclu-

sive control of Congress, likewise has been determined. *Western U. Teleg. Co.* v. *Pendleton,* 122 U. S. 347, 30 L. ed. 1187, 1 Inters. Com. Rep. 306, 7 Sup. Ct. Rep. 1126; *Western U. Teleg. Co.* v. *Commercial Mill. Co.* 218 U. S. 406, 54 L. ed. 1088, 36 L.R.A.(N.S.) 220, 31 Sup. Ct. Rep. 59, 21 Ann. Cas. 815; *Western U. Teleg. Co.* v. *Brown,* 234 U. S. 542, 58 L. ed. 1457, 34 Sup. Ct. Rep. 955. In the case last cited a telegraphic message was sent from South Carolina to the plaintiff in this city which, through the negligence of the defendant, was not delivered. The action was brought in South Carolina, and recovery had under a statute of that State, which made mental anguish a cause of action. The court ruled this statute "objectionable in its aspect of an attempt to regulate commerce among the States. That is, as construed, it attempts to determine the conduct required of the telegraph company in transmitting a message from one State to another or to this District by determining the consequences of not pursuing such conduct." In the Milling Company Case the court sustained a judgment for the plaintiff obtained under a statute of Michigan which prohibited a telegraph company from limiting its liability for the nondelivery of messages. But the cause of action arose in that case prior to the passage of said act of 1910. By this act, express authority is given for the different classification of messages, and the charge of different rates for the different classes is also expressly authorized. Repeated and unrepeated messages were well known to the art, and, of course, it must be presumed that Congress intended the words to be given their ordinary meaning. Prior to the enactment of this statute, as we have seen, the court of last resort had ruled that, in the absence of State statutes to the contrary, it was competent for a telegraph company to make such classification of its messages. *Primrose* v. *Western U. Teleg. Co. supra.* Congress therefore, in express terms, has sanctioned the practice theretofore existing.

But it is not necessary to decide whether by this legislation Congress intended to take complete and exclusive possession of the subject, because the plaintiff does not base her right to re-

covery upon any statute, but upon the common law, her contention being that her action is purely in tort for the reckless and negligent performance of a public duty. In other words, it is the plaintiff's contention that her right of action is not affected in any way by the conditions upon which the message was received by the defendant.

In *Fererro* v. *Western U. Teleg. Co.* 9 App. D. C. 455, 35 L.R.A. 548, which was an action for damages by the addressee of a telegram, there was a demurrer to plaintiff's declaration. The sole question considered, therefore, was whether, in any event, a right of action accrued. This question was answered in the affirmative. The question now at issue was neither raised nor discussed in the opinion of the court. But in *Ellis* v. *American Teleg. Co.* 13 Allen, 226, an action in tort by the addressee of a telegram, the precise question was in issue, and the court observed: "It is difficult to see how the plaintiff, who claims through the contract entered into by the sender of the message with the defendants, which created the duty and obligation resting on the defendants, can claim any higher or different degree of diligence than that which was stipulated for by the parties to the contract. Certainly a derivative or incidental right cannot be greater or more extensive than that which attached to the principal or source whence such right accrued or was derived." In *Stone* v. *Postal-Teleg. Co.* 31 R. I. 174, 29 L.R.A.(N.S.) 795, 76 Atl. 762, which was an action in trespass on the case for negligence, brought by the addressee of a telegram, the court said: "Any rights which the plaintiff may have are based upon and limited by the terms of the contract for transmission. The claim of the plaintiff that he has rights in the matter independent of this contract has no basis in reason. The defendant's duty in the premises must be regulated by its contract; not only its duty to the sender, but to this plaintiff. The American cases permit the plaintiff, as the receiver of the telegram, to come in and avail himself of the defendant's express and implied obligations arising under the contract; but the plaintiff's rights can be no greater than those of the party to the contract."

So, too, in *Western U. Teleg. Co.* v. *Van Cleave,* 107 Ky. 464, 92 Am. St. Rep. 366, 54 S. W. 827, it was said: "While the nature of his [plaintiff's] action is in tort, and not on a contract,—as he had none with the company,—he cannot recover if the company has complied with the terms of its contract and undertaking with the sender of the message,—provided, indeed, those terms are such as may reasonably be imposed and agreed upon." The supreme court of Tennessee, in *Manier* v. *Western U. Teleg. Co.* 94 Tenn. 442, 29 S. W. 732, where the plaintiff contended, as here, that he was not bound by the terms of the contract between the telegraph company and the sender of the message, said: "We think the sound rule is that the contract made between the sender and the telegraph company, which is for the benefit of the addressee, confers upon him the benefits, and charges him with the conditions of the contract." To the same effect are: *Russell* v. *Western U. Teleg. Co.* 57 Kan. 230, 45 Pac. 598; *Coit* v. *Western U. Teleg. Co.* 130 Cal. 657, 53 L.R.A. 678, 80 Am. St. Rep. 153, 63 Pac. 83; *Western U. Teleg. Co.* v. *Waxelbaum,* 113 Ga. 1017, 56 L.R.A. 741, 39 S. E. 443, 10 Am. Neg. Rep. 254; *Broom* v. *Western U. Teleg. Co.* 71 S. C. 506, 51 S. E. 259, 4 Ann. Cas. 611.

What "public duty" was imposed upon the defendant? It was its duty to receive and transmit with reasonable promptness the message addressed to the plaintiff, provided the sender complied with such conditions as the defendant was authorized to impose. The conditions which it in fact imposed have been held just and reasonable, as we have seen. The sender, knowing those conditions, and knowing that there was greater liability to error in transmitting an unrepeated than a repeated message, nevertheless elected the former mode of transmission, and paid according to the service to be rendered. But, it is insisted, the addressee had nothing to do with the negotiation of those terms. While, in a literal and technical sense, this undoubtedly is true, in the real sense the company was to serve both the sender and addressee *upon certain terms and conditions.* Some one had to negotiate those terms with the defend-

ant, and, in the very nature of the case, that duty and responsibility devolved upon the sender of the message. The sender and the addressee were mutually interested therein, and, unless, it be held that the liability of the telegraph company to the addressee is measured and fixed by the terms agreed upon between the company and the sender, the right of the company to impose reasonable terms and conditions when it accepts messages for transmission is shattered and of no avail. It may be argued that the statute would still have some force where the message was for the sole benefit of the sender, but how is the company to know, when it receives a message, for whose benefit it is? Not knowing, the company, to protect itself from the danger of suit by the addressee, would be compelled in every instance to take more than ordinary care, and repeat the message. Thus, while expressly authorized by statute to send unrepeated messages, and impliedly to limit its obligation growing out of the sending of such a message, it would in effect be deprived of that right. After all, how in reason can it be said that the public duty, the breach of which forms the basis of plaintiff's action, is not measured by the conditions upon which that duty was undertaken? In enacting this legislation Congress in effect has said to the defendant that it may permit the public to elect the class of service desired, and that the company's liability will be according to the class of service paid for. In the present case the company was paid for an unrepeated message. In transmitting that message a mistake occurred which, as was observed in the *Primrose Case,* 154 U. S. 1, 38 L. ed. 883, 14 Sup. Ct. Rep. 1098, amounted to no more than "ordinary negligence." The sender of this message agreed, and we think that upon both principle and authority the plaintiff was bound by the agreement, that in the event of mistake or delay in transmission or delivery, the defendant would not be liable beyond the amount received for sending the message. As the plaintiff was permitted to recover a greater amount than agreed upon, the judgment must be reversed, with costs, and the cause remanded for further proceedings.

*Reversed and remanded.*